COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ERIC SIDES, M.D.,


 Appellant,


v.



MARIA GUEVARA,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00213-CV



Appeal from the


County Court at Law Number 3


of El Paso County, Texas 


(TC# 2006-1025) 



O P I N I O N


 Dr. Eric Sides brings this interlocutory appeal of the trial court's denial of his motion to
dismiss Maria Guevara's medical negligence lawsuit for failure to serve him with an adequate
expert report. In one issue, he argues that the trial court's failure to dismiss Ms. Guevara's suit
and to award him costs and attorney's fees constituted an abuse of discretion. We disagree and
affirm.

 Maria Guevara underwent a surgical procedure on her infected and ingrown toenails on
the big toes of both feet on February 6, 2004. This procedure was performed by Dr. Johan
Penninck. On February 27, 2004, she went to Dr. Eric Sides, complaining of pain in her left knee
and left shoulder. Dr. Sides apparently made no notice or mention of her prior toe surgery at that
initial evaluation. He recommended that Ms. Guevara undergo a total knee replacement and
administered a shot of cortisone to her left shoulder. There is no indication in Ms. Guevara's
medical records that Dr. Sides was aware of the previous surgery on her toes. It further appears
that no discussion took place about the medical condition of her big toes before Dr. Sides
recommended a total knee replacement.

 On March 11, 2004, Dr. Sides performed a total knee replacement on Ms. Guevara. At
the same time, he also performed an indeterminate procedure on her big toes. Whatever the
procedure was, it was not documented by Dr. Sides in his "Operative Procedure Report;"
however, the perioperative nursing and anesthesia records clearly indicate that some type of big
toe surgery was performed. Following her knee replacement and toe surgeries, Ms. Guevara
developed an infection in her left knee which required that she undergo a second surgery to
debride the infection and receive intravenous antibiotics.

 Ms. Guevara filed her Plaintiff's Original Petition on March 2, 2006. In her petition, she
complains that Dr. Sides was negligent in operating on her big toes during a total left knee
replacement. Specifically, she alleges that Dr. Sides was negligent in performing a bilateral
ingrown toenail removal procedure during the same procedure as a total knee arthroplasty, (1)
failing to obtain informed consent from Ms. Guevara regarding the increased risk of infection in
the knee by doing both procedures at the same time, performing the two procedures before
Ms. Guevara's chronically infected ingrown toenails healed, and performing elective surgery
when she had a pre-operative fever. Ms. Guevara contends that as a result of Dr. Sides'
negligence, she suffered pain, mental anguish, disfigurement, physical impairment, and incurred
medical expenses.

 On June 8, 2006, in compliance with Section 74.351(a) of the Texas Civil Practice and
Remedies Code, Appellant served the expert report and curriculum vitae of Dr. Jeff Cartwright
on Dr. Sides. Dr. Sides filed a Motion to Dismiss and Objection to the Sufficiency of Plaintiff's
Expert Report pursuant to Sections 74.051(a)-(b) and (l) of the Texas Civil Practice and
Remedies Code, arguing that the report was deficient and, therefore, did not constitute an
objective good faith effort to comply with the law. Specifically, Dr. Sides contended that the
report failed to adequately address the standard of care, breach, and causation, and that
consequently, Ms. Guevara's suit against him must be dismissed.

 After a hearing, the trial court denied Dr. Sides' motion to dismiss. This interlocutory
appeal follows.

Jurisdiction

 We first acknowledge the controversy regarding whether we possess interlocutory
jurisdiction over a defendant physician or health care provider's appeal of a trial court's denial of
a motion to dismiss based on the inadequacy of the plaintiff's expert report.

 Intermediate courts of appeal do not have jurisdiction to review interlocutory trial court
orders absent some statutory authority. Academy of Oriental Medicine, L.L.C. v. Andra, 173
S.W.3d 184, 185 (Tex.App.--Austin 2005, no pet.), citing Stary v. DeBord, 967 S.W.2d 352,
352-53 (Tex. 1998). The Texas Civil Practice and Remedies Code gives us interlocutory
jurisdiction over, inter alia, certain interlocutory trial court orders relating to expert reports in
medical negligence lawsuits. See Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(9) and
(10)(Vernon Supp. 2006).

 Section 74.351(a) of the Texas Civil Practice and Remedies Code mandates that a
plaintiff in a health care liability claim serve one or more expert reports, within 120 days of the
date of the filing of the original petition, on each party or party's counsel. Each defendant
physician or health care provider then has twenty-one days in which to file objections to the
report. Failure to do so waives further objection to that particular report. 
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(a)(Vernon Supp. 2006).

 If, as to a defendant physician or health care provider, an expert report has not been
served within the 120 days as specified by Subsection (a), the trial court, on the motion of the
affected physician or health care provider, shall enter an order awarding reasonable attorney's
fees and costs incurred by the affected physician or health care provider, and dismissing
plaintiff's claim with respect to the physician or health care provider, with prejudice to the
refiling of the claim. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(b). This provision is subject to
Section 74.351(c), which provides that if an expert report has not been served within the time
period specified by Subsection (a) because elements of the report are found deficient, the court
may grant one thirty-day extension to the claimant to cure the deficiency. 
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(c).

 A court shall grant a motion challenging the adequacy of an expert report only if it
appears to the court, after hearing, that the report does not represent an objective good faith effort
to comply with the definition of an expert report in Section 74.351(r)(6). 
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(l). Subsection (r)(6) defines an expert report as a
written report by an expert that provides a fair summary of the expert's opinions as to the
elements of the standard of care, breach of that standard, and how that breach caused the alleged
harm. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6).

 The question before us is whether we have interlocutory jurisdiction to entertain an
appeal from a trial court's denial of a motion to dismiss under Section 74.351(b) where the
motion to dismiss is not based on plaintiff's failure to serve a report, but rather argues that the
report is so deficient as to comprise no report at all.

 We have interlocutory jurisdiction over an order of a district court, county court at law, or
county court that denies all or part of the relief sought by a motion under Section 74.351(b). (2) 
Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(9)(Vernon Supp. 2006). We do not have
interlocutory jurisdiction over a trial court's granting of a thirty-day extension to cure a deficient
report under Section 74.351(c). Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(9). This does not
mean, however, that we do not have interlocutory jurisdiction to review a trial court's denial of a
defendant's motion to dismiss an expert report that has been timely served but is allegedly
deficient.

 It is a general rule of statutory construction that we construe a statute in a manner
consistent with the Legislature's intent. Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 493
(Tex. 2001). In so doing, we may consider, inter alia, the legislative history, former statutory
provisions, and the consequences of a particular construction. Id.; Tex.Gov't Code Ann.
§ 311.023 (Vernon 2005). We must read the statute as a whole and make every attempt to
harmonize its various provisions. Marcus Cable Associates, L.P. v. Krohn, 90 S.W.3d 697, 706
(Tex. 2002); Sotelo v. Interstate Financial Corporation, 224 S.W.3d 517, 522 (Tex.App.--El Paso 2007, no pet.).

 Construing the provisions in Sections 74.351(a), (b), and (c) in conjunction, we find that
the sanctions provided for in Subsection (b) are available to a defendant whether a plaintiff failed
to serve a report at all or whether the report was so deficient as to constitute no report. 

 Under Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, an order
denying a motion to dismiss under Section 74.351(b) is subject to interlocutory appeal, as long as
no extension was either agreed to by the parties pursuant to Subsection (a) and no thirty-day
extension was granted under Subsection (c). Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(9). 
Accordingly, we have interlocutory jurisdiction over an appeal from a trial court's denial of a
dismissal under Section 74.351(b) both where there is no report, and where the report was
inadequate and no extension to cure was granted by the trial court. Andra, 173 S.W.3d at 188
n.7; Bogar v. Esparza, ---S.W.3d ---, 2007 WL 1852904 * 3 (Tex.App--Austin June 28, 2007, no
pet. h.)(If a report does not meet Subsection (r)(6)'s definition of expert report it does not satisfy
plaintiff's requirements under Subsection (a) and exposes the plaintiff to sanctions under
Subsection (b)). (3)

 Dr. Sides' motion challenged both the adequacy of Dr. Cartwright's report under Section
74.351(l) and sought relief, dismissal with prejudice, and attorney's fees, under Subsection (b).

The trial court's order explicitly states that it is denying relief under Sections 74.351(a)-(b) and
(l). Since the trial court found Dr. Cartwright's report to be adequate, the plaintiff had no need to
request an extension under Section 74.351(c). Section 51.014(a)(9) provides that we have
interlocutory appeal over an order denying relief under Section 74.351(b).
Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(9). Thus, reading the statute as a whole, we find
that we have interlocutory jurisdiction to hear this appeal.

 Having determined that we have interlocutory jurisdiction over this matter, we turn to the
merits of Dr. Sides' complaints.

Standard of Review

 We review the trial court's decision to deny a motion to dismiss for an abuse of
discretion. American Transitional Care Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873, 875
(Tex. 2001); Kendrick v. Garcia, 171 S.W.3d 698, 702-03 (Tex.App.--Eastland 2005, pet.
denied). A trial court abuses its discretion if it acts without reference to any guiding rules or
principles or acts in an arbitrary or unreasonable manner. Kendrick, 171 S.W.3d at 703, citing
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert denied, 476
U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur merely
because a trial judge decides a matter within its discretion differently than the reviewing court
would under similar circumstances. Downer, 701 S.W.2d at 242.

 Ms. Guevara timely served the expert report of Dr. Cartwright on Dr. Sides. Dr. Sides
timely filed objections to that report and requested that the trial court dismiss Ms. Guevara's
cause of action. An "expert report" is defined as a written report, by an expert, that provides a
fair summary of the expert's opinions as of the date of the report, regarding applicable standards
of care, the manner in which the care rendered by the physician or heath care provider failed to
meet the standards, and the causal relationship between the failure and the injury, harm, or
damages claimed. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6).

 An expert report must provide enough information to fulfill two purposes: (1) inform the
defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for
the trial court to conclude that the claims have merit. Bowie Memorial Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002), citing American Transitional Care Center of Texas, Inc. v. Palacios,
46 S.W.3d 873, 879 (Tex. 2001). A report need not marshal all of the plaintiff's proof, but it
must include the expert's opinion on the standard of care, breach, and causal relationship. 
Wright, 79 S.W.3d at 52. In determining whether a report constitutes an objective good faith
effort to provide a fair summary of the expert's opinions, the trial court should look no further
than the report itself since all the information relevant to the inquiry is contained within the four
corners of the document. Id.; Tex.Civ.Prac.&Rem.Code Ann. § 74.351(l), (r)(6).

 Although an expert report need not present all the plaintiff's proof, the expert may not
merely state conclusions about the required elements of standard of care, breach, and causation. 
Wright, 79 S.W.3d at 52. Rather, an expert must explain the basis of his opinions and link his
conclusions to the facts. Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999).

 Dr. Sides asserts that Appellant's report is not a good faith effort because it is speculative. 
He maintains that Dr. Cartwright failed to establish that there was an infection present in
Ms. Guevara's big toes when she presented to Dr. Sides with knee pain. As a result, he argues,
Dr. Cartwright's report is conclusory on the issues of breach and causation. (4)

 Dr. Cartwright's report states the following:

 1. The failure on behalf of Dr. Eric Sides to examine, evaluate, and
assess not only the status of Mrs. Guevara's toe nails and the recent
surgical wounds pursuant to Dr. Penninck's surgery but also the
impact of such upon the planned elective total knee replacement is
not consistent with the standard of care. 


 2. The failure on behalf of Dr. Sides to counsel Mrs. Guevara prior to
surgery regarding the potential impact that her ongoing toe
problems and the need for any surgery to treat her toes might have
on her total knee so that Mrs. Guevara had the opportunity to
decide if she wished to postpone that entirely elective procedure, is
not consistent with the standard of care. This failure to counsel
appropriately means that she was not adequately informed of the
risks associated with performing a knee replacement in the
presence of a persistently infected surgical site distal to the knee to
be replaced. Since she was not appropriately and adequately
informed, she could not have provided adequate informed consent. 
Therefore, not only is Dr. Sides' failure to obtain adequate
informed consent inconsistent with the standard of care but may
also be an infraction of the Rules and Regulations of the Texas
State Board of Medical Examiners.


 3. The failure on behalf of Dr. Sides to document the procedures he
obviously performed on Mrs. Guevara's toes at the time of the
knee replacement is not consistent with the standard of care. In
addition, this documentation failure may be a violation pursuant to
the Rules and Regulations of the Texas State Board of Medical
Examiners.


 4. The performance of an elective total knee replacement in the
presence of an active infection at an unhealed surgical site in the
same extremity distal to the planned knee arthroplasty is not
consistent with the standard of care.


 The evaluation and management provided by Dr. Sides is inexcusable. He
appears to have been completely unaware that she had recent surgery on her big
toes. He appears to have been completely unaware that she had an ongoing
problem with her big toes and to only have discovered this at the time of surgery.
This oversight is inexcusable and represents a terribly incomplete and insufficient
approach to the evaluation and management of this patient. Dr. Sides' proposal to
proceed with an elective knee replacement was thus based on an inappropriately
brief and insufficient evaluation. It is simply inexcusable not to have identified
the problem Mrs. Guevara was having with her big toes until after he had
performed the left knee replacement.


 In addition, Dr. Sides' failure to document the surgery he performed on Mrs.
Guevara is deplorable. Since Dr. Sides did not document that he had performed
any procedures on Mrs. Guevara's big toes in his 'Operative Procedure Report', it
is unclear what exactly was done, nor whether the toes were addressed first or
whether the knee was replaced first. . . . It is unclear whether he discovered the
presence of the problem with her toes until after he had already replaced the knee
or whether he knew about it beforehand and replaced the knee regardless.


. . .



 This failure on behalf of Dr. Eric Sides to practice in accordance with the standard
of care is made even more egregious when the entire sequence could have been
obviated by simply examining the patient's toes before recommending and before
performing an entirely elective knee replacement procedure. Had Dr. Sides
identified the problem Mrs. Guevara was having with her toes prior to performing
the elective knee replacement he should have counseled the patient as to the
potential increased perioperative risk of infection and either he or the patient or
both could have decided to post-pone the surgery until her toes had healed. 


 The peer reviewed orthopedic literature clearly establishes that one of the contra-indications to performing an elective knee replacement for osteoarthritis is the
presence of infection or an unhealed wound. This has been substantiated by a
variety of studies which clearly report that performing a knee replacement in the
presence of infection or in the presence of an unhealed wound peripherally in the
same limb, increases the risk of infection dramatically. By virtue thereof, the
infection or wound should first be treated and eradicated or healed prior to
performing an entirely elective knee arthroplasty. Dr. Sides' inappropriately
cursory assessment of Mrs. Guevara and his performance of an elective knee
replacement pursuant to that cursory evaluation reflects a complete and utter
failure to appreciate and consider the reported and well established
contraindications for a knee replacement in the orthopedic literature and a blatant
and reckless disregard for this patient's well being. 


. . .



 His management was flagrantly inconsistent with the standard of care and
probably also the laws of the State of Texas and represents both the factual and
proximate cause of her subsequent knee infection and need for additional surgery
and IV antibiotics.


 Dr. Sides' chief complaint about Dr. Cartwright's opinion is that he does not ever state
that there was an infection present at the time of the knee replacement. Ms. Guevara counters
that this information was unavailable to Dr. Cartwright because Dr. Sides failed to document the
status of Ms. Guevara's toes at the time of the surgery.

 The case presently before us is similar to our previous decision in Gallardo v. Ugarte,
145 S.W.3d 272 (Tex.App.--El Paso 2004, pet. denied). (5) In Ugarte, the expert report in question
faulted Dr. Ugarte for failing to assess and diagnose his patient. The report addressed the lack of
information in the medical records, noting that Dr. Ugarte failed to accurately assess and
diagnose the patient and, further, failed to explain his actions in his notes. It was these failures,
the report concluded, that caused the death of the patient. Ugarte, 145 S.W.3d at 279. We held
that the expert report in Ugarte represented a good-faith effort to provide a fair summary of the
expert's opinions as to causation because it indicated that if the proper steps had been taken, the
injury could have prevented from occurring or progressing. Id. at 280.

 Likewise, Dr. Cartwright's report specifically and repeatedly postulates that it was
Dr. Sides' failure to appreciate Ms. Guevara's toe problems and failure to document what type of
surgery he performed that breached the standard of care and caused Ms. Guevara's knee
infection. Dr. Cartwright details the repeated failure of Dr. Sides to properly evaluate
Ms. Guevara prior to surgery and states that this level of care was "flagrantly inconsistent with
the standard of care" and is the cause of her subsequent need for additional surgery.

 In support of his arguments, Dr. Sides relies on Jernigan v. Langley, 195 S.W.3d 91 (Tex.
2006). Langley, however, is distinguishable from the case before us. In Langley, the Court
determined that the expert report in question omitted at least one of the requisite statutory
elements and ordered the case dismissed with prejudice. Id. at 94. There, the plaintiff filed two
expert reports. However, only one expert even mentioned Dr. Jernigan, and that mention was
limited to a single sentence. Langley, 195 S.W.3d at 93. In finding this brief note insufficient,
the Court stated that:

 This passing reference does not identify with specificity any action or inaction by
Dr. Jernigan that breached the applicable standard of care. This perfunctory
mention alleges no misconduct whatsoever, much less discusses the required
elements with 'sufficient specificity' to inform Dr. Jernigan of 'the conduct the
plaintiff has called into question.'


Id., quoting Palacios, 46 S.W.3d at 875. The Court concluded that the court of appeals, in
finding the report sufficient, indulged in multiple inferences that were not supported by the
report. Langley, 195 S.W.3d at 93-4.

 Here, there is no question whether Dr. Cartwright's report properly identifies Dr. Sides as
the physician who was allegedly negligent. Moreover, Dr. Cartwright's expert report lays out his
opinions with "sufficient specificity" to inform Dr. Sides of the specific conduct that
Ms. Guevara has called into question. Palacios, 46 S.W.3d at 879. Dr. Cartwright specifically
states that Dr. Sides should have appreciated Ms. Guevara's ongoing toe problems, counseled her
regarding the risk of operative infection, and documented the procedure he performed on her toes
during the knee surgery. He further states that the management of Ms. Guevara's care was
inconsistent with the standard of care and the cause of her subsequent knee infection and need for
further surgery and IV antibiotics.

 The two purposes of the expert report are to inform the defendant of the specific conduct
the plaintiff calls into question and to provide the trial court with a basis to conclude that
plaintiff's claims are meritorious. Palacios, 46 S.W.3d at 879. Dr. Cartwright's report is
sufficiently detailed to notify Dr. Sides of the conduct Ms. Guevara calls into question, the
actions Dr. Sides should have taken, and the ways in which he failed. The trial court could have
reasonably determined that the report provided a fair summary of Dr. Cartwright's opinions as to
causation because it linked the failures of Dr. Sides to appreciate and diagnose Ms. Guevara's toe
problems and to document the surgery he performed to the subsequent infection in her knee. 
Therefore, we find that the trial court did not commit an abuse of discretion by denying Dr. Sides
motion to dismiss.

 Having found that the trial court did not abuse its discretion, we overrule Appellant's
issue and affirm the judgment of the trial court.



August 30, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.
1. An arthroplasty is the plastic surgery of a joint such as the hip or knee: the operative
formation or restoration of a joint. Webster's Third New International Dictionary of the
English Language 123 (1993).
2. We also have interlocutory jurisdiction over an order that grants relief under Section
74.351(l). Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(10). This provision is not at issue
here.
3. See Michael S. Hull, et al., House Bill 4 and Proposition 12: An Analysis with
Legislative History, 36 Tex.Tech L.Rev. 212-14 (2005).
4. Dr. Sides' motion to dismiss in front of the trial court challenged Dr. Cartwright's report
on the issues of the standard of care, breach, and causation. Before us, Dr. Sides appears to have
abandoned any challenge to Dr. Cartwright's delineation of the standard of care. His brief
purports to raise only issues related to his articulation of how the standard was breached and how
that caused Ms. Guevara damages. Both in the brief and at oral argument, however, the
argument focused solely on whether Dr. Cartwright's report was sufficient as to the causation
element. Accordingly, Appellant has waived any challenges to Dr. Cartwright's expert report as
to the elements of standard of care and breach. See Tex.R.App.P. 38.1(h); Marquez v.
Providence Memorial Hosp., 57 S.W.3d 585, 594 (Tex.App.--El Paso 2001, pet. denied). 
Therefore, we focus our review only on whether Dr. Cartwright's report was sufficient as to
causation.
5. Ugarte was decided under the old law which was repealed in 2003. See Act of May 30,
1977, 65th Leg., R.S., ch. 817, § 1, 1977 Tex.Gen.Laws 2039, amended by Act of May 1, 1995,
74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex.Gen.Laws 985, 986, repealed by Act of
June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex.Gen.Laws 847, 884. The
standards we used to determine the adequacy of a report, as laid out by Palacios, 46 S.W.3d at
873, and its progeny, however, remain the same.