COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ANDREW PALAFOX, M.D.,


 Appellant,


v.



CRUZ SILVEY, Individually and as
Personal Representative of the Estate of
Carmen Jiner, Deceased, 


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00313-CV
 


Appeal from the


34th District Court 


of El Paso County, Texas 


(TC# 2005-1094 ) 



O P I N I O N


 Dr. Andrew Palafox appeals the denial of his motion to dismiss this medical malpractice
suit due to the inadequacy of Appellee's expert reports. We affirm.

 Carmen Jiner was transferred from Mountain View Health Care Center, a nursing home
where she had lived for over two years, to Sierra Medical Center on January 23, 2004. (1) She was
scheduled for minor, elective shoulder surgery with Appellant, orthopedist Dr. Andrew Palafox. 
In the nursing home, Jiner had been restricted to a "mechanical" or pureed diet, due to poor
dental health, trouble chewing, and swallowing.

 Following the surgery, Ms. Jiner was due to be transferred back to the nursing home
when the nursing staff found her on the floor in her hospital room. She was non-responsive and
not breathing well. It took eight attempts to successfully intubate Ms. Jiner before she was
moved to the Intensive Care Unit. According to the medical records, a large amount of "stomach
contents" had to be suctioned from Ms. Jiner's lungs during resuscitation. Ms. Jiner died on
January 27, 2004.

 The El Paso county medical examiner determined Ms. Jiner died due to "aspiration
pneumonia" after choking on food. Ms. Jiner's sister, Appellee Cruz Silvey, filed this medical
negligence action alleging that her sister died as the result of Palafox's order for a "regular"or
non-pureed diet. Silvey alleged that Palafox should have continued Ms. Jiner's mechanical diet
while she was hospitalized, that he was negligent in failing to inquire into Ms. Jiner's dietary
needs, and proximately caused her death by ordering a regular, non-pureed diet.

 Silvey filed medical expert reports from four expert witnesses, Dr. John Allen,
Dr. Christina Cruz-Grost, Nurse Lisa Leiding, and Nurse Judy Blair. Palafox filed a motion to
dismiss under Section 74.351(b) of the Texas Civil Practice and Remedies Code, challenging the
adequacy of the reports and the experts' qualifications. Tex.Civ.Prac.&Rem.Code Ann.
§ 74.351(b)(Vernon Supp. 2007). During a hearing on the motion, the trial court sustained
Palafox's objections to Nurse Blair's and Nurse Leiding's qualifications to opine on the standard
of care applicable to a physician. See Tex.Civ.Prac.&Rem.Code Ann. § 74.401(a)(Vernon
2005). The trial court then denied Palafox's motion to dismiss.

 In this interlocutory appeal, Palafox argues the trial court abused its discretion by denying
his motion to dismiss Silvey's claims for failure to serve him with an adequate expert report. In
Issue One, he contends neither Dr. Allen nor Dr. Cruz-Grost is qualified to render an expert
medical opinion in this case. In Issue Two, he claims Dr. Cruz-Grost's report is conclusory on
the issue of causation. In Issue Four, he asserts that Dr. Allen's report is insufficient because it is 
misleading and deceptive. (2) We affirm the trial court's decision. (3)

Jurisdiction

 Appellee Silvey challenges whether we have interlocutory jurisdiction over this appeal. 
Because this is a denial of a defendant physician's motion to dismiss pursuant to Section
74.351(b) of the Texas Civil Practice and Remedies Code, we possess interlocutory jurisdiction
to consider this appeal. Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(9)(Vernon Supp 2007);
Sides v. Guevara, No. 08-06-00213-CV, 2007 WL 2456882 (Tex.App.--El Paso Aug. 30, 2007,
no pet. h.).

 We review the trial court's decision to deny a motion to dismiss for an abuse of
discretion. American Transitional Care Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873, 875
(Tex. 2001); Kendrick v. Garcia, 171 S.W.3d 698, 703 (Tex.App.--Eastland 2005, pet. denied). 
A trial court abuses its discretion if it acts without reference to any guiding rules or principles or
acts in an arbitrary or unreasonable manner. Kendrick, 171 S.W.3d at 703, citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159,
106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur merely because a
trial judge decides a matter within its discretion differently than the reviewing court would under
similar circumstances. Downer, 701 S.W.2d at 242.

 In a health care liability claim, a claimant shall, not later than the 120th day after the date
the claim was filed, tender one or more expert reports with a curriculum vitae of each expert
listed in the report for each physician or health care provider against whom a liability claim is

 asserted. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(a). The court shall grant a motion
challenging the adequacy of an expert report only if it appears that the report does not represent
an objective good faith effort to comply with the definition of an expert report. 
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(l). An "expert report" is defined as a written report,
by an expert, that provides a fair summary of the expert's opinions as of the date of the report
regarding the applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal relationship
between the failure and the injury, harm, or damages claimed. Tex.Civ.Prac.&Rem.Code Ann.
§ 74.351(r)(6).

 To constitute a good-faith effort, an expert report must provide enough information to
fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into
question; and (2) provide a basis for the trial court to conclude that the claims have merit. Bowie
Memorial Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002), citing Palacios, 46 S.W.3d at 879. A
report need not marshal all of the plaintiff's proof, but must include the expert's opinion on the

 standard of care, breach, and causal relationship. Wright, 79 S.W.3d at 52.

 The statute does not require that a single expert address all liability and causation issues;
rather the plaintiff may satisfy the requirements by serving reports of separate experts regarding
different issues. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(i). The report need not present all
the plaintiff's proof, however, the expert may not merely state conclusions about elements. 
Wright, 79 S.W.3d at 52. An expert must explain the basis of his opinions and link his
conclusions to the facts. Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999). In determining
whether a report constitutes a good faith effort, the trial court should look no further that the
report itself since all the information relevant to the inquiry is contained within the four corners
of the document. Wright, 79 S.W.3d at 52.

 In Issue One, Palafox contends that neither Dr. Allen nor Dr. Cruz-Grost is qualified to
provide an expert opinion in this case. The qualification of a witness to serve as an expert is
within the trial court's discretion. Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996). 

 Dr. Allen's report was offered to establish the standard of care and provide an opinion on
breach. Under Section 74.401 of the Texas Civil Practice and Remedies Code, a person may
qualify as an expert witness on the issue of whether the defendant physician departed from the
accepted standards of medical care only if the person is a physician who: (1) is practicing
medicine at the time such testimony is given or was practicing medicine at the time the claim
arose; (2) has knowledge of accepted standards of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the
basis of training or experience to offer expert opinions regarding those accepted standards of
medical care. Tex.Civ.Prac.&Rem.Code Ann. § 74.401(a). The court shall consider whether,
at the time the claim arose or at the time the testimony is given, the witness is board certified or
has other substantial training or experience in an area of medical practice relevant to the claim,
and is actively participating in rendering medical care relevant to the claim. 
Tex.Civ.Prac.&Rem.Code Ann. § 74.401(c). 

Dr. Allen's Qualifications

 Dr. Allen's curriculum vitae shows that he is a British trained physician and is licensed in
New Mexico. During his career in the United States, he has, among other things, served as an
Orthopaedic Fellow at Children's Hospital Medical Center and an Associate in Orthopaedics at
Massachusetts General Hospital in Boston. He has taught orthopaedics at Harvard Medical
School. He is listed in the "Specialist Register" in Trauma and Orthopaedic Surgery in the
United Kingdom, and has worked as an orthopedist in both the United Kingdom and the United
States in various capacities. He established his most recent practice in Albuquerque, New
Mexico in 2003. Dr. Allen was practicing medicine both at the time the claim arose and at the
time his testimony was given.

 According to Dr. Allen's report, the standard of care at issue in this case is that of "an
admitting physician writing orders for a patient's care and treatment." He further opines that
"[w]hile there are orders that are specific to each individual specialty, there are also basic orders,
which include but are not limited to dietary orders, that are common to all specialties." Dr. Allen
states that he is qualified on the basis of his training and experience to offer opinions in this case.

 Palafox argues Dr. Allen is not qualified to render an expert opinion in this case because
there is nothing in his curriculum vitae to indicate that he is or was involved in admitting patients
to hospitals at the time the claim arose or at the time of the testimony.

 Dr. Allen has not practiced in a hospital since 1989. Section 74.401 requires the trial
court to consider whether the expert was actively participating in rendering medical care relevant
to the claim. Tex.Civ.Prac.&Rem.Code Ann. § 74.401(c). This "actively participating" prong
is a consideration in determining whether the expert has sufficient training or experience to
testify. See id. While Dr. Allen was not active in a hospital practice, he was actively practicing
orthopedic medicine. Moreover, according to his report, the standards of care relevant here are
basic and not limited to any particular specialty. Therefore, the trial court did not abuse its
discretion in determining Dr. Allen was qualified to opine on the standard of care.

Dr. Cruz-Grost's Qualifications

 Dr. Cruz-Grost's report was offered on the issue of causation. Section 74.403(a) provides
that "a person may qualify as an expert witness on the issue of the causal relationship between
the alleged departure from accepted standards of care and the injury, harm, or damages claimed
only if the person is a physician and is otherwise qualified to render opinions on that causal
relationship under the Texas Rules of Evidence." Tex.Civ.Prac.&Rem.Code Ann. § 74.403(a). 
Texas Rule of Evidence 702 requires an expert witness to be qualified on the basis of
"knowledge, skill, experience, training, or education . . . ." Tex.R.Evid. 702.

 In deciding whether an expert is qualified, the trial court must ensure those who purport
to be experts truly have expertise concerning the "actual subject about which they are offering an
opinion." Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797, 800 (Tex. 2006), citing
Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998). The trial court is
not required to admit opinion evidence which is connected to the existing data by the ipse dixit of
the expert. Mendez, 204 S.W.3d at 801. If the expert brings merely his credentials and
subjective opinion, his testimony is unsupported and cannot be of assistance to the jury. Id. 
Rule 702 requires that expert testimony actually assist the trier of fact to be admissible. Id.

 Palafox argues Dr. Cruz-Grost is not qualified to opine on the issue of causation because
there is no evidence other than the statement in her report to indicate that she has experience with
the dietary needs of elderly patients. Palafox continues that Dr. Cruz-Grost does not discuss how
her experience qualifies her to provide an opinion on the causal link between ordering a non-pureed diet and choking, and she does not explain what aspiration pneumonia is or how it is
related to and can cause death.

 Dr. Cruz-Grost explains her qualifications to render an opinion on causation as follows:

 I am a board certified psychiatrist and neurologist. I am also a licensed
registered nurse. I frequently see elderly patients and evaluate their diets,
including ability to chew and swallow. Due to my education, training and
experience as a physician, which included medical school, one year of internal
medicine, a residency in psychiatry and neurology, and a life long study of all
aspects of medicine, I have the expertise required to make an opinion in this case. 
Information regarding the swallowing mechanism was part of physiology that was
taught to me and most likely every physician in medical school. It was also part
of my nursing education. Thus, an understanding of swallowing is knowledge
that is found through out medicine and is not unique to any particular specialty.


 According to Dr. Cruz-Grost's curriculum vitae, she currently works in private practice,
as an independent expert for the El Paso Probate Court, and as the Regional Director of
Psychiatry for Wexford Medicine in Corrections in Albuquerque, New Mexico. Although it is
not explicit in her report, Dr. Cruz-Grost's work with the El Paso Probate Court is evidence that
she has experience evaluating elderly patients, most likely in the course of guardianship
proceedings. In addition, she states that knowledge of the "swallowing mechanism" is not
specialty specific, and is taught to all physicians, including herself, while they are still in medical
school. Because the report indicates that Dr. Cruz-Grost is a physician who had knowledge and
experience concerning the subject of her opinion, the trial court did not abuse its discretion in
determining she was qualified to offer an opinion on the cause of Ms. Jiner's aspiration and
death. Finding no abuse of discretion, we overrule Issue One.

 In Issue Two, Palafox contends the trial court abused its discretion because Dr. Cruz-Grost's report is conclusory on the issue of causation. Palafox argues Dr. Cruz-Grost's report
does not include an explanation of how his alleged negligence caused Ms. Jiner's death.

 A causal relationship is established by proof that the negligent act or omission was a
substantial factor in bringing about the harm and that absent said act or omission the harm would
not have occurred. Costello v. Christus Santa Rosa Heath Care Corp., 141 S.W.3d 245, 249
(Tex.App.--San Antonio 2004, no pet.). An expert report must provide information linking the
defendant's purported breach of the standard of care to the plaintiff's injury. Wright, 79 S.W.3d
at 53; see also Hutchinson v. Montemayor, 144 S.W.3d 614, 617 (Tex.App.--San Antonio 2004,
no pet.). The expert must also explain the basis of his statements to link his conclusions to the
facts. Wright, 79 S.W.3d at 52. The report must provide enough information to inform the
defendant of the conduct at issue and allow the trial court to conclude that the suit has merit. 
Hutchinson, 144 S.W.3d at 617.

 According to Dr. Cruz-Grost's opinion, Ms. Jiner's aspiration and death was
"substantially caused by the provision of a regular diet." Dr. Cruz-Grost relied on the autopsy
report and the medical record from Sierra Medical Center for the factual basis of her opinion. 
She states these sources, "confirm that Ms. Jiner's death was due to choking on her food." The
report explains that, "[a]spiration occurs when food goes down the trachea and not the
esophagus." Dr. Cruz-Grost also notes that Ms. Jiner had a history of eating only a mechanical
diet at Mountain View Health Care Center and had not had a problem with choking in over two
years in the facility.

 The report links the alleged breach, ordering a regular diet for a patient with problems
chewing and swallowing, to her choking, aspiration, and death. Dr. Cruz-Grost explains the
basis of her opinion including: the autopsy report; the medical records; Ms. Jiner's history at
Mountain View Health Care Center; and her own medical education which included studying
physiology and the "swallowing mechanism." This report, along with Dr. Allen's, contains
sufficient information to inform Palafox what conduct is at issue in the case and how it
contributed to Ms. Jiner's death. See Tex.Civ.Prac.&Rem.Code Ann. § 74.351(i). Based on
these reports, the trial court was within its discretion to conclude the suit has merit. See
Hutchinson, 144 S.W.3d at 617. Issue Two is overruled.

 In Issue Four, Palafox contends the trial court abused its discretion because Dr. Allen's
report is "misleading and deceptive" and, therefore, fails to demonstrate that Silvey's claims have
merit. Palafox bases his argument on Dr. Allen's citation to several outside sources in his report
referencing the standard of care. Palafox argues Dr. Allen mis-quotes and mis-characterizes
citations from "A Report to Centers for Medicare and Medicaid Services," dated March 3, 2006,
the 2006 Illinois Administrative Code governing diet orders for Alzheimer's patients in long-term care facilities, and a February 2001 Medicare audit of podiatrists and optometrists for
comprehensive nursing facilities.

 Without addressing the applicability of these sources, and because we cannot look beyond
the four-corners of the document in our review to address the allegations of mis-characterization
of sources, we note Dr. Allen also provides a statement of the standard of care based on his own
medical training and experience. In his report, Dr. Allen states:

 This case concerns the standards of care for an admitting physician writing orders
for a patient's care and treatment. While there are orders that are specific to each
individual specialty, there are also basic orders, which include but are not limited
to dietary orders, that are common to all specialties. By training, education and
experience I am qualified to express opinions in this case.


. . .


 

 These sources support the opinion that the standard of care is that the admitting
physician is responsible for a patient's dietary orders. Dr. Palafox exercised that
responsibility when he wrote dietary orders for Carmen Jiner on 01-23-04. These
were 'Diet Reg', which is taken to mean 'regular diet.'


 At Mountain View Healthcare Center Carmen Jiner had had a physician's orders
for 'mechanical soft diet' since 10-16-02. A mechanical diet consists of food that
is pureed. She required a mechanical diet because she had missing teeth, chewing
problems and did not have or did not use dentures. Her 'difficulty with
mentation' and 'impaired vision' probably contributed to her need for this
mechanical diet. These two factors were probably among the reasons for her not
using a call bell noted to be two inches from her hand on 01-25-04 at Sierra
Medical Center.


 Dr. Andrew Palafox, an orthopedic surgeon, placed Carmen Jiner on a regular diet
at Sierra Medical Center. As admitting physician, Dr. Palafox was responsible for
correctly ordering care and treatment for Carmen Jiner.


. . .


 

 The standard of care for Dr. Andrew Palafox was to order a diet consistent with
Carmen Jiner's needs and ability. If Dr. Palafox was not certain of Ms. Jiner's
dietary needs he had options, which included having nursing staff ask Mountain
View Healthcare Center for her dietary orders there, contacting her physician at
Mountain View Healthcare Center to ask her dietary requirements and consulting
a physician colleague or hospital dietitian at Sierra Medical Center to determine
her dietary needs. 

 

 This standard of care is not specialty specific. Rather, all admitting physicians, whether
they are family practitioners, internists, surgeons or any other specialty are required to
provide a patient with the proper diet for the patient's needs and limitations. 

 

 Dr. Andrew Palafox did not meet the standard of care for ordering a proper diet for
Carmen Jiner in that he ordered a regular diet when she required a mechanical diet due to
her problems with chewing.


 The standard of care is defined according to what an ordinarily prudent physician would
have done under the same or similar circumstances. Palacios, 46 S.W.3d at 880. Identifying the
standard of care is critical. Id. Whether a defendant physician breached his duty of care to a
patient cannot be determined without specific information about what the defendant should have
done differently in a particular case. Id. The expert report must at least set out what care was
expected, but not given. Id.

 As quoted above, Dr. Allen's report clearly states the standard of care applicable to
Palafox when he admitted Ms. Jiner to Sierra Medical Center. According to the report, Palafox
was responsible for ordering a diet appropriate for Ms. Jiner during her hospitalization. The
report states that Palafox violated the standard of care by failing to investigate Ms. Jiner's dietary
needs, and by ordering a regular diet. Because the report informs Palafox what conduct Silvey
has called into question and provides a basis for the trial court to conclude the claim has merit,
the trial court did not abuse its discretion. See Wright, 79 S.W.3d at 52. We overrule Issue Four.

 Having overruled all of Appellant's issues, we affirm the trial court's decision.



November 1, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.
1. Tenet Hospitals Limited, L.L.P, d/b/a Sierra Medical Center and Integrated Health
Services at Hanover House, Inc., d/b/a Mountain View Health Care Center are also listed as
defendants in the lawsuit below but are not parties to this appeal.
2. Issue Three originally challenged Dr. Allen's report on the issue of causation. In her
brief, Silvey states that Dr. Allen is only presented as an expert on the standard of care and
breach. As he is not a causation expert, there is no reason for us to address Dr. Allen's report
under Issue Three.
3. In a cross-issue, Silvey argues all four reports can be read together to satisfy the
requirements of the Medical Liability Act, and the trial court erred to the extent its ruling on
Nurse Blair's and Nurse Leiding's reports cannot be considered in conjunction with the other
reports. She continues that the trial court erred by sustaining Palafox's objections to the nurses'
expert reports. While the statute does not require a single expert to satisfy both liability and
causation in a single report, the statue does require that expert reports for use in a case against a
physician must be prepared by physicians. See Tex.Civ.Prac.&Rem.Code Ann.
§§ 74.351(r)(5)(A)(Vernon Supp 2007) and 74.401(a)(Vernon 2005). The defendant in this
instance is Dr. Palafox. There is no evidence that Blair or Leiding are also medical doctors. 
Therefore, we overrule Silvey's cross-point.