Floyd E. JERNIGAN, M.D., Petitioner,

v.

Marie LANGLEY, Individually and as Representative of the Estate of John Langley and Mariah Langley, a Minor, Respondent.

No. 05–0299.

Supreme Court of Texas.

June 9, 2006.

Greg White, Nancy Napier Morrison, Waco, Bob Burleson, Naman, Howell, Smith & Lee, L.L.P., Temple, for Petitioner.

Thomas B. Cowart, Law Offices of Windle Turley, P.C., Dallas, for Respondent.

PER CURIAM.

The issue in this medical malpractice case is whether the plaintiff's expert reports meet the specificity requirements of section 13.01 of the Medical Liability and Insurance Improvement Act (the "MLIIA"). Former TEX. REV. CIV. STAT. art. 4590i, § 13.01.[1]

In September 1998, Marie Langley brought suit alleging that the death of her 46-year-old husband, John Langley, resulted from the negligence of Providence Hospital in Waco and several physicians, including Dr. Floyd Jernigan. The trial court dismissed Langley's suit against Dr. Jernigan for failure to provide an expert report that satisfied the requirements of section 13.01 of the MLIIA. The court of appeals reversed the trial court's dismissal. We reverse the judgment of the court of appeals and dismiss with prejudice Langley's claims against Dr. Jernigan.

On the morning of October 6, 1996, John Langley went to Providence Hospital complaining of stomach pain. An abdominal x-ray was performed, and John was diagnosed with fecal impaction. He was given a gallon of GoLYTELY to drink at home and was instructed to return that evening. He returned a few hours later in acute pain and was admitted to the hospital. John's condition worsened, and he underwent emergency surgery that evening. He fared poorly overnight and was operated on again the following day. John died the next morning, October 8, 1996.

Marie Langley filed this suit in September 1998, and filed two timely expert reports thereafter. In June 2000, Dr. Jernigan filed a motion to dismiss with prejudice under section 13.01(e) of the MLIIA based on alleged deficiencies in Langley's expert reports. At the hearing on the motion to dismiss, Langley argued that Dr. Jernigan had waived his statutory right to seek dismissal because he had waited more than 600 days to challenge the reports. Langley also moved for an extension of time to allow the late filing of a third expert report. The trial court denied Langley's motion for an extension of time, and then severed and dismissed Langley's claims against Dr. Jernigan. The court of appeals reversed, holding that Dr. Jernigan had impliedly waived his rights under section 13.01. 76 S.W.3d 752 (Tex.App.—Waco 2002). This Court disagreed, reversing and remanding the case back to the court of appeals. 111 S.W.3d 153 (Tex.2003).

On remand, the court of appeals initially affirmed the trial court's dismissal, No. 10–

1. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87 (adding expert report requirement, at former TEX. REV. CIV. STAT. art. 4590i, § 13.01(d)), *repealed and recodified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 884, 898–99 ("House Bill 4") (adopting chapter 74 of the Texas Civil Practice and Remedies Code, applicable only to actions filed on or after September 1, 2003, and continuing prior law in effect for actions filed before that date) (current version at TEX. CIV. PRAC. & REM CODE § 74.351).

00–00373–CV, 2004 WL 1211607, 2004 Tex. App. LEXIS 4972 (June 2, 2004), but nine months later issued a new opinion holding that Langley's reports were adequate under section 13.01, and therefore the trial court abused its discretion in dismissing Langley's claims against Dr. Jernigan, 2005 WL 486759, 2005 Tex.App. LEXIS 1687 (Mar. 2, 2005). Alternatively, the court concluded that the trial court abused its discretion in refusing to grant Langley a 30–day grace period under section 13.01(g) because Langley's failure to comply was not intentional or the result of conscious indifference. *Id.* 2005 WL 486759, at \*5, 2005 Tex.App. LEXIS 1687 at \*10–18.

■ Under section 13.01(d)(1) of the MLIIA, a plaintiff bringing a health care liability claim must furnish an expert report within 180 days of filing suit. Former TEX. REV. CIV. STAT. art. 4590i, § 13.01(d)(1). The expert report need not marshal every bit of the plaintiff's evidence, but it must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm or damages claimed." *Id.* § 13.01(r)(6). If a claimant fails to file an adequate expert report timely, the trial court must dismiss a claimant's suit with prejudice upon motion by the defendant. *Id.* § 13.01(e). The trial court must grant a motion challenging the adequacy of an expert report only if the report does not represent a good faith effort to comply with section 13.01(r)(6)'s definition of an expert report. *Id.* § 13.01(l). Finally, upon timely motion, the trial court must grant the claimant a 30–day grace period to comply with the statute if the trial court finds that the claimant's failure to comply

was "not intentional or the result of conscious indifference but was the result of an accident or mistake." *Id.* § 13.01(g).

■ A trial court's decision to dismiss under section 13.01(e) is reviewed for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877–78 (Tex.2001). Denial of a section 13.01(g) grace period is also reviewed for abuse of discretion. *Walker v. Gutierrez,* 111 S.W.3d 56, 63 (Tex.2003).

We held in *Palacios* that in order to constitute a good-faith effort under section 13.01(l), an expert report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." 46 S.W.3d at 875.

■ Limiting our section 13.01(l) adequacy analysis to the four corners of Langley's two timely-filed expert reports, *id.* at 878, it is notable that one report does not mention Dr. Jernigan at all, and the other report only mentions him in this single sentence: "At 4:30 p.m. [John Langley's] case was discussed with Dr. Jernigan and at 4:50 p.m. a lactulose enema was ordered."

Dr. Jernigan appears in only one line of one report. This passing reference does not identify with specificity any action or inaction by Dr. Jernigan that breached the applicable standard of care. This perfunctory mention alleges no misconduct whatsoever, much less discusses the required elements with "sufficient specificity" to inform Dr. Jernigan of "the conduct the plaintiff has called into question." *Id.* at 875.

As to the standard of care applicable to Dr. Jernigan, the court of appeals found that the following stand-alone statement in one of the reports captured the standard

of care for each defendant-physician: "surgical consultation should have been obtained once the x-rays demonstrated obstruction." 2005 WL 486759, at *2, 2005 Tex.App. LEXIS 1687 at *8–9. Even assuming *arguendo* that the standard of care applicable to every doctor reviewing such x-ray results is to obtain an immediate surgical consult, neither of Langley's expert reports asserts that Dr. Jernigan was ever provided with the x-ray results or had any independent duty to review them. Instead, the court of appeals indulges multiple inferences that are simply unsupported by the scant reports.

Moreover, according to the reports, the x-rays were taken on John Langley's first visit to Providence Hospital at 6:40 a.m. on October 6, 1996, whereas Dr. Jernigan did not become involved in John's treatment until the case was "discussed" with him at 4:30 p.m., nearly ten hours later. The expert reports state that the surgeons were called at 6:40 p.m., but do not assert that Dr. Jernigan personally failed to order a surgical consult prior to that time or that the roughly two-hour gap between when the surgeons were called and when they arrived at 8:30 p.m. was attributable to Dr. Jernigan.

We agree with the dissent below that Langley's expert reports failed to comply with section 13.01 because "[e]ven if we assume that the reports address the standard of care with respect to each doctor, . . . neither report addresses how *Dr. Jernigan* breached the standard or how his unstated breach of duty caused John's death with sufficient specificity for the trial court, and Jernigan, to determine that the allegations against Jernigan had any merit." 2005 WL 486759, at *14, 2005 Tex.App. LEXIS 1687 at *51–52 (Gray, C.J., dissenting). A glancing statement that John's case was "discussed" with Dr. Jernigan sheds no light whatsoever on what Dr. Jernigan allegedly did wrong, much less how his alleged error(s) proximately caused John's death. Thus, we conclude that the reports omitted statutory elements of Marie Langley's claim against Dr. Jernigan.

■ Because Langley's expert reports omit at least one of the three specifically enumerated requirements of section 13.01(r)(6), they cannot constitute a good faith effort to meet the statutory requirements. *Palacios*, 46 S.W.3d at 879. Accordingly, the trial court had no discretion but to conclude, as it did here, that Langley's claims against Dr. Jernigan must be dismissed. *Id.* at 880.

The trial court did not abuse its discretion in dismissing Langley's claims against Dr. Jernigan. Accordingly, without hearing oral argument, we reverse the court of appeals' judgment and dismiss with prejudice Langley's claims against Dr. Jernigan. TEX. R. APP. P. 59.1.