Affirmed in part, Reversed and Remanded in part, and Opinion filed July
19, 2007








Affirmed in part, Reversed and Remanded in part, and Opinion filed July 19,
2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00796-CV

_______________

 

GENE THOMAS and CAROLYN THOMAS, Appellants

 

V.

 

JEFFERY ALFORD, M.D., SWEETWATER MEDICAL

ASSOCIATES, P.L.L.C., and ROBERT MALONE, M.D.,
Appellees

                                                                                                                                               


On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause No. 06-CV-150120

                                                                                                                                               


 

O P I N I O N

 

In this medical malpractice case,
Gene and Carolyn Thomas (the AThomases@) appeal an order dismissing with prejudice their claims
against Jeffery Alford, M.D. (AAlford@), Sweetwater Medical Associates, P.L.L.C. (ASweetwater@), and Robert Malone, M.D. (AMalone@) on the grounds that: (1) the
Thomases= expert reports were sufficient; and
(2) the trial court abused its discretion by denying their request for an extension
of time to file corrected expert reports.  We affirm in part and reverse and
remand in part.

                                                                              








Background

The Thomases sued the appellees for
failing to diagnose Mr. Thomas=s cancer until after it became incurable.  After filing suit,
the Thomases filed three expert reports and curriculum vitae (collectively, the
Areports@);[1]
appellees each filed objections to each report and sought dismissal of the
Thomases= claims; the Thomases filed responses
to the objections; the trial court held a hearing on the objections; and the
trial court issued interlocutory orders dismissing the Thomases= causes of action with prejudice.

                                                            Standard
of Review

In a health care liability claim, a claimant
is required to timely serve on each party or their attorney one or more expert
reports, with a curriculum vitae of each expert, for each physician or health
care provider against whom a liability claim is asserted.  Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(a) (Vernon Supp. 2007).[2] 
If, as to a defendant physician or health care provider, a sufficient expert report
is not timely served, then on the motion of the affected physician or health
care provider, the trial court shall enter an order dismissing the claim with
respect to the physician or health care provider, with prejudice to the
refiling of the claim.  Id. ' 74.351(b)(2).








However, a court shall grant such a
motion, challenging the adequacy of an expert report, only if it appears to the
court, after a hearing, that the report does not represent an objective good
faith effort to comply with the definition of an expert report in section
74.351(r)(6).  Id. ' 74.351(l).  Under that definition, "expert report"
means a written report by an expert that provides a fair summary of the
expert's opinions as of the date of the report regarding applicable standards
of care, the manner in which the care rendered by the physician or health care
provider failed to meet those standards, and the causal relationship between
that failure and the injury, harm, or damages claimed.  Id. ' 74.351(r)(6).  Therefore, to
constitute a good‑faith effort, an expert report must discuss the
standard of care, breach, and causation with sufficient specificity to inform
the defendant of the conduct the plaintiff has called into question and to
provide a basis for the trial court to conclude that the claims have merit.  Jernigan
v. Langley, 195 S.W.3d 91, 93 (Tex. 2006).

In reviewing the sufficiency of a
report, the trial court should look no further than the report itself, which
need not marshal all the plaintiff=s proof, but cannot merely state the
expert=s conclusions about the required
elements.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). 
Rather, the expert must explain the basis of his statements to link his
conclusions to the facts.  Id.  However, because a plaintiff need not
present evidence in the report as if it were actually litigating the merits,
the information in the report does not have to meet the same requirements as
evidence offered in a summary judgment proceeding or at trial.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex.
2001).  Nor must the report express the causal relationship in terms of
reasonable medical probability or other Amagic@ words.  Bowie, 79 S.W.3d at
53. Additionally, a claimant may satisfy any expert report requirement of
section 74.351 by serving multiple reports of separate experts regarding
different physicians or different issues, such as liability and causation, for
a single physician.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(i).








A person is qualified as an expert to
give opinion testimony on whether a physician departed from the accepted standards
of care if he is a physician who is licensed in one or more states in the
United States and: (1) is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim arose; (2) has knowledge
of accepted standards of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim; and (3) is qualified
on the basis of training or experience to offer an expert opinion regarding
those accepted standards of medical care.  Id. '' 74.351(r)(5)(A), 74.401(a), (g).  In
determining whether a witness is qualified on the basis of training or
experience, the court shall consider whether, at the time the claim arose or at
the time the testimony is given, the witness: (1) is board certified or has
other substantial training or experience in an area of medical practice
relevant to the claim;  and (2) is actively practicing medicine in rendering
medical care services relevant to the claim.  Id. ' 74.401(c).[3]


A person is qualified to give opinion
testimony concerning the causal relationship between the injury, harm,
or damages claimed and the alleged departure from the applicable standard of
care only if the person: (1) is a physician; and (2) is otherwise qualified to
render opinions on that causal relationship under the Texas Rules of Evidence. 
See Tex. Civ. Prac. & Rem. Code Ann. '' 74.351(r)(5)(C), 74.403(a) (Vernon
2005).  To be so qualified under the Texas Rules of Evidence, an expert must
have knowledge, skill, experience, training, or education regarding the
specific issue before the court that would qualify the expert to give an
opinion on that particular subject.  Broders v. Heise, 924 S.W.2d 148,
153 (Tex. 1996).  When a party can show that a subject is substantially
developed in more than one field, testimony can come from a qualified expert in
any of those fields.  Id. at 154.

A trial court's decision to dismiss
under these provisions is reviewed for abuse of discretion.  Jernigan,
195 S.W.3d at 93.

                                                                Expert
Reports

                                                     Qualifications
of Grossbard








The Thomases= first issue contends, in part, that
Dr. Grossbard was qualified to offer an expert opinion on the standard of care
for Alford because he is extensively trained and experienced in treating
cancer.  Alford argues that Grossbard lacks training, knowledge, and experience
regarding the standards of care applicable to a family practice physician. 
However, the standard is whether an expert: (1) is board certified or has other
substantial training or experience in an area of medical practice relevant
to the claim;  and (2) is actively practicing medicine in rendering medical
care services relevant to the claim.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.401(c).  Because the claim in this case relates to the
diagnosis and treatment of cancer, and Grossbard is board certified and
practices in the field of oncology, he is qualified to offer an opinion on the
standard of care for the diagnosis and treatment of cancer.

                                                 Adequacy
of Reports as to Alford

The Thomases= first issue also contends that
Grossbard=s report adequately states the standard of care, breach, and causation
elements pertaining to Alford.  Regarding the first two of these, Grossbard=s report, after reciting his
qualifications and Mr. Thomas=s treatment history, states:

After reviewing these medical
records, I conclude that the failure of Dr. Alford to arrange for appropriate
follow-up of the right lower pulmonary nodule seen on the CT scan in 3/28/02
represented a significant deviation from the prevailing standard of care.  The
radiologist, Dr. Robert Malone, noted that the nodule had increased in size and
that a neoplasm was Amore likely.@  The appropriate standard would have been for Dr. Alford to
follow up on the findings of this report and to proceed with needle biopsy or
thoracoscopic biopsy in March 2002.  Unfortunately, no biopsy was arranged and
no follow-up chest CT was ever arranged.

Alford argues that Grossbard=s report is deficient concerning the
standard of care and breach in that it fails to identify: (1) whether the
prevailing standard of care is that applicable to a family practice physician,
such as Alford, or to an oncologist, such as Grossbard; and (2) the time frame
in which a follow up CT should have been arranged, what the follow up tests
would be expected to reveal, and what treatments would have resulted therefrom.








However, for this purpose, statements
concerning the standard of care and breach need only identify what care was
expected and not given with such specificity that inferences need not be
indulged to discern them.  See Jernigan, 195 S.W.3d at 93-94; Palacios,
46 S.W.3d at 880.  In this case, Grossbard=s report specifies that the care
expected but not given was to follow up on the findings in the March 28, 2002
report, that the nodule had increased in size and that a neoplasm was more
likely, with a biopsy in March of 2002.  Because this was adequate to inform
Alford of the conduct the Thomases had called into question, it was not a
proper basis to find the report deficient.

Regarding the causal relationship
between Alford=s failure to meet the standard of care and the injury claimed, Grossbard=s report states:

After a 47 month delay, the patient
was found to have a metastatic well-differentiated adenocarcinoma involving the
liver in 2/06.  Based on my review of the records, it is apparent that the
right lower nobe nodule present in 2002 served as the primary tumor.

If Dr. Alford
had proceeded with appropriate evaluation in 3/02, this patient more likely
than not would have been diagnosed with an early stage lung cancer (stage I)
that would have been surgically resectable and curable, likely without the need
for chemotherapy or radiation therapy.  When the patient=s disease was diagnosed in 2/06, he
had stage IV lung cancer for which only palliative therapy is available.  Mr.
Thomas= disease is incurable and will prove
fatal.  The median survival for patients with stage IV lung cancer is less than
one year.  Thus, the delay in diagnosis in this patient=s lung cancer allowed his tumor to
progress from stage I to stage IV and eliminated his chance for curative
therapy.

In Bowie, the expert=s report stated as to causation: AI do believe that it is reasonable to
believe that if the x‑rays would have been correctly read and the
appropriate medical personnel acted upon those findings then Wright would have
had the possibility of a better outcome.@  79 S.W.3d at 51.  In finding this
insufficient to set forth the causation element, the Court reasoned that:

[T]he report simply opines that
Barbara might have had "the possibility of a better outcome" without
explaining how Bowie's conduct caused injury to Barbara.  We cannot infer from
this statement, as the Wrights ask us to, that Bowie's alleged breach precluded
Barbara from obtaining a quicker diagnosis and treatment for her foot.  Rather,
the report must include the required information within its four corners. 
Because the report lacks information linking the expert's conclusion (that
Barbara might have had a better outcome) to Bowie's alleged breach (that it did
not correctly read and act upon the x‑rays), the trial court could have
reasonably determined that the report was conclusory.








Id. at 53. (citations omitted).  By contrast, Grossbard=s report provides the link between
Alford=s alleged breach (failing to proceed
with biopsy in March of 2002) and its conclusion on causation (obtaining an
earlier diagnosis would have allowed treatment of the cancer while it was still
curable).  Because Grossbard=s report thus provided adequate opinions on standard of care,
breach, and causal relationship, the Thomases= first point of error is sustained,
and we need not address their second point of error challenging whether the
report of Fields was also sufficient in this regard.

                                                 Adequacy
of Report as to Malone

The Thomases= third point of error contends that
Dr. Francis=s report adequately stated  the standard of care, breach, and causation
elements pertaining to Malone.  Malone argues that Francis=s report either failed to state each
element or stated it in a vague and conclusory manner.  After reciting his
qualifications as a diagnostic radiologist and the treatment history, Francis=s report states:

My opinion based on the above
findings is that there was a neoplastic nodule in the right lower lung visible
on 3/28/02, which did not receive appropriate diagnostic follow up until almost
four years later, in February 2006.  At that time, there was evidence of
widespread metastatic neoplasm, markedly reducing the chance for effective
therapy and survival.

I have enclosed a copy of the
Guideline for Communication, from the American College of Radiology Guidelines,
a collection of practice guidelines formulated by the American College of
Radiology, the organization representing most board certified radiologists in
this country.  As Stated [sic] in the guideline, unexpected abnormal findings
seen on imaging studies should be Adirectly communicated@ to the referring physician, as well
as by the usual dictated and typed report which is issued for all imaging
studies.  My own practice is to telephone the referring physician about
any unexpected findings such as suspected neoplasm, and document this telephone
call in the report.  I feel that faxing the report does not fulfill the
recommendation for direct communication.








Therefore, it is my opinion that the
radiologist, Dr. Malone, fell below the standard of care for a board
certified radiologist by not directly communicating these unexpected
findings.  This failure to directly communicate these unexpected findings contributed
to the delay in this patient=s diagnosis, and eventually may affect the
patient=s chances for survival.

(emphasis added).

There are several problems with
Francis=s report.  First, it is not apparent
from the report whether the guideline referred to is: (1) a standard of care
for what any ordinarily prudent radiologist would do under the same or
similar circumstances; or, alternatively, (2) a higher standard to which board
certified radiologists should aspire.  Second, the report does not state that
the guideline requires telephoning the referring physician to meet the
standard for direct communication, but only that Francis views the
guideline as imposing that requirement.  Third, Francis=s conclusion that the delay in the
patient=s treatment resulted from Malone=s failure to telephone Alford
requires an assumption or inference, such as that: (1) Malone=s office did not properly fax the
report to Alford=s office; (2) Alford=s office received, but did not
convey, the fax to Alford; (3) Alford received the fax but overlooked it; or
the like.  However, the report states no facts that either directly indicate
any of these facts, or reasonably support any such inferences.  Because it is
also theoretically possible that Alford received, and was aware of, the fax,
but failed or declined to take further action for other reasons, Francis=s report is speculative in its
conclusion on causation.[4]  Lastly,
Francis=s report does not show that he has
knowledge, training, or experience in cancer treatment that would
qualify him to give an opinion on the likelihood that an earlier diagnosis
could have produced a better outcome.  Because the Thomases= third point of error thus fails to
demonstrate that Francis=s report satisfied the statutory requirements, it is
overruled.

                                                                              

 

 








Extension of Time

The Thomases= fourth point of error contends that
the trial court abused its discretion by denying their request for an extension
of time to file corrected expert reports if the filed reports were found
deficient.  However, the Thomases have not cited, nor have we found, any part
of the record at which they sought, or the trial court made, any ruling on a
motion for extension of time.  See Tex. R. App. P.  33.1(a).  More importantly, a ruling on such a motion is
neither a final judgment nor a type of interlocutory order that may be appealed
in a case before a final judgment is rendered.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 51.014 (Vernon 1997).  Therefore, the Thomases= forth point of error presents
nothing for our review and is overruled.       

Accordingly, the judgment of the
trial court is affirmed as to the dismissal of claims against Malone and
reversed and remanded as to the dismissal of claims against Alford and
Sweetwater.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered and Opinion filed
July 19, 2007.

Panel consists of Chief Justice
Hedges and Justices Fowler and Edelman.









[1]           See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351 (Vernon Supp. 2007).





[2]           Although some amendments to the statutes
cited in this opinion became effective after the Thomases= cause of action accrued in 2002, we have cited to the
current version of the statute for expedience because none of the subsequent
amendments are material to our disposition.





[3]           In determining whether an expert is
qualified to offer expert testimony on whether a physician departed from
accepted standards of medical care, a trial court may depart from the foregoing
criteria if, under the circumstances, it determines that there is a good reason
to admit the expert=s testimony, in which event the court will state on
the record its reason for admitting the testimony.  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.401(d) (Vernon 2005).





[4]           To whatever extent Grossbard or Fields
would have been qualified to provide such an opinion, neither of their reports
mention Malone.  See Jernigan, 195 S.W.3d at 94.