IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
08-1066
════════════
 
Michael T. Jelinek, M.D. and Columbia Rio Grande Healthcare, L.P. d/b/a 
Rio Grande Regional Hospital, Petitioners,
 
v.
 
Francisco Casas and Alfredo DeLeon, Jr., as 
Personal Representatives of the Estate of Eloisa Casas, Deceased, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Thirteenth District of Texas
════════════════════════════════════════════════════
 
 
Argued February 18, 2010
 
            
Chief Justice Jefferson, 
joined by Justice Green and Justice Lehrmann, dissenting in 
part.
                                                

            
We must decide whether an expert report gave a “fair summary” of the expert’s 
opinions regarding standard of care, failure to meet the standard, and the link 
between that failure and the patient’s damages.  We must consider the 
expert’s opinions “as of the date of the report.”  Tex. Rev. Civ. Stat. art. 4590i 
§ 13.01(r)(6) (repealed 2003).  To do so, we 
must disregard today’s holding that, at trial, there was no evidence linking the 
discontinuation of antibiotics to increased suffering by Casas.  The expert report submitted in this case gave 
fair notice of a meritorious claim—that the doctor failed to ensure that his 
patient received antibiotics, thereby increasing her pain and suffering.  I 
would affirm the court of appeals’ judgment with respect to the doctor.  

I.          
Background
            
Eloisa Casas, a patient recently diagnosed with colon 
cancer, was admitted to Rio Grande Hospital for abdominal pain.  The cancer 
had perforated her colon, the contents of which leaked into her abdominal 
cavity, causing an abscess.  After the doctor drained and surgically 
removed the abscess, he discovered that Casas had an 
E. coli infection, for which the doctor prescribed two antibiotics.  
Although those prescriptions were supposed to have been renewed five days later, 
they lapsed.  Casas contends this mistake 
occurred because the doctor failed to ensure that hospital staff complied with 
his renewal order.  During the four days after the prescriptions expired, 
Casas’s surgical incision began to emit a putrid 
odor.  She developed several infections in addition to E. coli, 
exacerbating her pain and extending her stay in the hospital.  Casas died two months after she was discharged. 
            
Casas’s estate sued the Hospital and two of the 
treating doctors, Dr. Garcia-Cantu and Dr. Jelinek, 
for negligently causing Mrs. Casas “grievous 
embarrassment and humiliation, as well as excruciating pain the remainder of her 
life which she would not have suffered to such degree if properly diagnosed, 
treated and cared for . . . .”   The trial court denied Dr. Jelinek’s motion to dismiss the case against him.  
Nevertheless, the estate nonsuited both doctors more 
than a year before Casas’s claim against the Hospital 
was tried to a jury.  At that trial, the jury 
found the hospital 90% negligent, and each doctor 5% 
negligent.  The trial court rendered judgment against the hospital, and the 
court’s order non-suiting Dr. Jelinek “with prejudice” 
merged into that final judgment.
            
Dr. Jelinek and the hospital appealed the trial 
court’s judgment.  The hospital complained that the evidence was legally 
insufficient to support the verdict.  Dr. Jelinek 
complained that the trial court improperly denied him attorney’s fees, as the 
expert report was not a good faith effort to comply with statutory 
requirements.  The court of appeals affirmed, 2008 Tex. App. LEXIS 5647, 
*28-*29, and the appellants below are now petitioners here.  I fully join 
the Court’s rendition of judgment for the hospital.  I disagree with the 
Court’s holding as to the doctor.
II.        
Good faith effort; fair summary
            
Former article 4590i provided that “[a] court shall grant a motion challenging 
the adequacy of an expert report only if it appears to the court, after hearing, 
that the report does not represent a good faith effort to comply with the 
definition of an expert report in [the statute].”  Tex. Rev. Civ. Stat. art. 4590i 
§ 13.01(l).  “That definition requires, as to each defendant, a 
fair summary of the expert's opinions about the applicable standard of care, the 
manner in which the care failed to meet that standard, and the causal 
relationship between that failure and the claimed injury.”  Am. 
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 
46 S.W.3d 873, 878 (Tex. 2001) (citing Tex. Rev. Civ. Stat. art. 4590i § 13.01(r)(6)).  Because an expert report is filed long before 
discovery is complete, we cannot judge it according to what subsequent discovery 
reveals or how the evidence develops at trial.  The question is whether the 
report fairly summarizes the malpractice elements before the case is tested in a 
full adversary process.  For that reason, “to avoid dismissal, a plaintiff 
need not present evidence in the report as if it were actually litigating the 
merits.  The report can be informal in that the information in the report 
does not have to meet the same requirements as the evidence offered in a 
summary-judgment proceeding or at trial.”  Id. at 
879.  
            
The report must also give the defendant notice of the conduct the plaintiff 
challenges, and the trial court must have a basis to determine whether the claim 
has merit.  Id.  The dividing line between a sufficient and an 
inadequate report is impossible to draw precisely.  We have said, 
therefore, that the determination must be made in the first instance by the 
trial court, and review of that decision asks not how an appellate court would 
have resolved the issue, but instead whether the trial court abused its 
discretion.  See, e.g., Jernigan v. 
Langley, 195 S.W.3d 91, 93 (Tex. 2006); Walker v. Gutierrez, 111 
S.W.3d 56, 63 (Tex. 2003).
III. 
     Dr. Daller’s report 

            
Dr. Daller is a physician and an expert on 
intra-abdominal abscesses and infection.  His report states that a doctor 
treating a patient like Casas must ensure that the 
antibiotics he prescribes are actually administered.  Despite that 
standard, Dr. Daller states that antibiotics 
prescribed for Ms. Casas were not administered from 
July 17 through July 23, even though “[t]here [wa]s no 
order to discontinue the antibiotic therapy.”  He concluded that Dr. Jelinek breached the standard of care by his “failure to 
recognize that the antibiotics were not being administered as ordered.”  
Dr. Daller concludes that “[t]his breach in the 
standard of care . . . , within reasonable medical probability, resulted in a 
prolonged hospital course and increased pain and suffering . . . .”
IV.      
Dr. Daller gave a “fair summary” of the required 
standard of care and how the allegedly inadequate care fell below that 
standard.
 
            
The Court concludes that Dr. Daller’s report lacks the 
detail necessary to conclude that the estate’s lawsuit has merit.   
But the cases it cites as support involve situations in which a hindsight view 
is entirely appropriate.  Earle v. Ratliff, for example, is a 
summary judgment case; it presents the higher evidentiary standard that 
Palacios rejected for expert reports.  Earle v. Ratliff, 998 
S.W.2d 882, 890 (Tex. 1999) (“Summary judgment can be granted on the affidavit 
of an interested expert witness, . . . but the 
affidavit must not be conclusory. . . . [R]ather, the expert must explain the basis of his statements 
to link his conclusions to the facts.”).  Similarly, the standard employed 
in City of San Antonio v. Pollock, 284 S.W.3d 809, 817-18 (Tex. 2009), 
also cited by the Court, is inapplicable here, since it examined an expert 
report under the “no evidence” standard of review.  See ___S.W.3d 
at___.  
In 
Palacios we held that an expert report that failed to articulate a standard 
of care or explain how the defendant hospital breached that standard was not a 
good faith effort to comply with the statutory requirements. 
 Palacios, 46 S.W.3d at 880.  The 
expert in that case blamed the hospital for taking no action to prevent a 
patient from falling out of his bed, even though the patient “had a habit of 
trying to undo his restraints.”  Id. at 879-880.  The report, 
as such, was not a fair summary of the evidence because it neglected to 
articulate what actions the hospital should have taken that it did 
not.  Id. at 880.  Thus, the trial 
court did not abuse its discretion by dismissing the plaintiff’s claim for lack 
of a good faith effort to summarize the expert’s opinions.
Subsequently, 
in Bowie Memorial Hospital v. Wright, we held that the trial court did 
not abuse its discretion in concluding that an expert report failed to comply 
with the statute, as  the report did not 
“establish how any act or omission of employees of Bowie Memorial Hospital 
caused or contributed to [the patient’s] injuries.”  See Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 
51-53 (Tex. 2002) (quoting the expert in that case as speculating, “I do believe 
that it is reasonable to believe that if the x-rays would have been correctly 
read and the appropriate medical personnel acted upon those findings then [the 
plaintiff] would have had the possibility of a better outcome.”).  We 
observed that a report must satisfy Palacios’s two-part test.  Id. at 52.  Because the report “lack[ed] information linking the 
expert’s conclusion (that [the plaintiff] might have had a better outcome) to 
[the defendant’s] alleged breach (that it did not correctly read and act upon 
the x-rays), the trial court could have reasonably determined that the report 
was conclusory.”  Id. at 
53.  
            
In each of those cases, the trial court could not have evaluated the claim’s 
merit without speculating about actions the defendant could have taken to 
prevent injury.  No such speculation is required here.  Dr. Daller states that had the antibiotics been administered 
from July 17 through July 23, Eloisa Casas would have 
suffered less.  Dr. Daller could have stated that 
conclusion in greater detail, of course, but “[a] report need not marshal all 
the plaintiff's proof.”  Palacios, 46 S.W.3d at 
878.  Daller’s report includes his 
opinions on (1) the applicable standard of care (to maintain vigilance over a 
patient’s treatment), (2) the manner in which the care failed to meet that 
standard (failing to ensure the treatment he ordered was actually administered), 
and (3) the causal connection between the failure and the claimed injury 
(without the antibiotics, the patient’s pain and suffering increased and she 
required additional hospitalization).  
            
A “good faith effort” does not require that the report “meet the same 
requirements as the evidence offered in a summary-judgment proceeding or at 
trial”; therefore, an expert report does not fail the good faith effort test 
merely because it may not later prove legally sufficient to support a 
judgment.  Id. at 879.  So, here, 
whether the Casas estate ultimately amassed sufficient 
proof in an adversarial trial is beside the point; the claim itself was far from 
frivolous.  See id. at 878 (noting that 
“one purpose of the expert-report requirement is to deter frivolous 
claims”).  The law imposes a penalty for filing a frivolous suit.  
Only by today’s decree does it also punish a claimant for failing to win an 
arguably meritorious case.  Cf. TransAmerican Natural Gas Corp. v. Powell, 811 
S.W.2d 913, 918 (1991) (holding that “sanctions cannot be used to adjudicate the 
merits of a party’s claims or defenses unless a party’s hindrance of the . . . 
process justifies a presumption that its claims or defenses lack merit.”).  
       
            
I agree with the Court that the Estate failed to prove causation at trial; I 
disagree that, as to Dr. Jelinek, the expert report 
was not a good faith attempt to comply with the statute.  I respectfully 
dissent in part from the Court’s judgment.
 
                                                                        
_____________________________________
                                                                        
Wallace B. Jefferson
                                                                        
Chief Justice
 
OPINION DELIVERED: December 3, 
2010