

# NUMBER 13-15-00024-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARIA ZAMARRIPA, AS TEMPORARY
GUARDIAN OF THE ESTATES OF R.F.R.
AND R.J.R., MINORS, AND OLGA FLORES,
AS TEMPORARY ADMINISTRATOR OF THE
ESTATE OF YOLAND IRIS FLORES,                          Appellants,

v.

BAY AREA HEALTH CARE GROUP, LTD
D/B/A CORPUS CHRISTI MEDICAL CENTER,
HIDALGO COUNTY EMS, AND HIDALGO
COUNTY EMERGENCY MEDICAL
SERVICE FOUNDATION,                                    Appellees.

On appeal from the 445th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Perkes

Appellants Maria Zamarripa, as temporary guardian of the estates of R.F.R. and R.J.R., minor children, and Olga Flores, as temporary administrator of the estate of Yolanda Flores (collectively Zamarripa), appeal the trial court's granting of motions to dismiss their health care liability claim in favor of appellees Bay Area Health Care Group d/b/a Corpus Christi Medical Center (CCMC), Hidalgo County EMS, and Hidalgo County Emergency Medical Service Foundation (EMS).   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West, Westlaw through 2015 R.S.).   By three issues, Zamarripa argues: (1) the trial court erred by granting EMS more relief than requested; (2) the expert reports constitute a "good faith effort" as to EMS; and (3) the expert reports constitute a "good faith effort" as to CCMC.   We affirm.

## I.   BACKGROUND

When she was approximately thirty-two weeks pregnant, Yolanda Flores arrived by ambulance at Valley Regional Medical Center in Brownsville.   That day, she was assessed and treated at Valley Regional by Dr. Patrick Ellis, M.D. and Dr. Whitney Gonsoulin, M.D.   Due to pregnancy complications, Hidalgo County EMS transported Flores from Valley Regional to Bay Area Hospital in Corpus Christi by ground ambulance later in the day.   Due to a traffic jam, EMS was delayed in arriving at Bay Area Hospital and Flores suffered a placental abruption in route.   She arrived at Bay Area Hospital bleeding.   She underwent a cesarean section and hysterectomy but was pronounced dead at the hospital later that night.

2

Zamarripa filed suit against CCMC and EMS, along with numerous other defendants, alleging CCMC's and EMS's negligence caused Flores's death.[1]  In support of the health care liability claims against CCMC, Zamarripa timely filed two expert reports—the first authored by Frederick Harlass, M.D. and the second authored by Grace Spears, R.N.  Dr. Harlass practices maternal-fetal medicine while Spears is a pediatric case manager for hematology and oncology.  In support of the health care liability claim against EMS, Zamarripa filed expert reports authored by Dr. Harlass and Jonathan Tibaldo, R.N.  Tibaldo is a licensed registered nurse who is certified in and practices emergency medicine.

EMS filed objections to Dr. Harlass's and Tibaldo's expert reports.  Specifically, EMS alleged that Dr. Harlass's report failed to establish that EMS caused Flores's death. EMS also challenged Tibaldo's qualifications and claimed that his report failed to state the standard of care.  EMS filed no separate motion to dismiss, though in its objection to the expert reports it concluded that Zamarripa filed "no reports" and asked the trial court to dismiss her claims.

CCMC also filed objections to Dr. Harlass's and Spears's expert reports.  CCMC argued that Dr. Harlass's report did not state the standard of care for CCMC or its employees, failed to explain how CCMC breached the standard of care, failed to explain how any breach in the standard of care caused Flores's death, and misstated the medical records and communications associated with the medical care Flores received.  CCMC

---

[1] Though not part of this appeal, the additional named defendants are Colombia Valley Health Care System, L.P. d/b/a Valley Regional Medical Center, Dr. Ricardo Lemus, Dr. Patrick Ellis, and Dr. Whitney Gonsoulin.  The trial court severed these defendants from the present case.

further asserted that Dr. Harlass was unqualified to opine on CCMC's standard of care or the cause of Flores's death. Similarly regarding Spears's report, CCMC alleged that it failed to identify the standard of care, imposed a duty on CCMC forbidden by Texas law, failed to explain how CCMC breached the standard of care, based opinions on speculation and conjecture, and misstated medical reports and medical care that Flores received. It also claimed that Spears was unqualified to render opinions on the standard of care. CCMC subsequently filed a motion to dismiss Zamarripa's claim and asserted that Dr. Harlass and Spears's reports constituted "no report" as to CCMC.

The trial court granted the requested relief and dismissed Zamarripa's case against CCMC and EMS. This appeal ensued.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995); *see also Low*, 221 S.W.3d at 620.

## III. APPLICABLE LAW

4

The purpose of the expert report requirement in a health care liability claim is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). An expert report "need not marshal all the plaintiff's proof." *Palacios*, 46 S.W.3d at 878 (construing former article 4590i, section 13.01, now section 74.351). Additionally, the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879. However, if a report omits any of the statutory elements, it cannot be a good-faith effort. *Id.* A report that merely states the expert's conclusions about the standard of care, breach, and causation is not sufficient. *Id.*

The expert's report must provide a "fair summary" of the expert's opinions regarding the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion "only if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." *Id.* § 74.351(l).

## IV. EMS REQUESTED RELIEF

By her first issue, Zamarripa argues the trial court abused its discretion by granting EMS more relief than it requested. Zamarripa claims that EMS never filed a separate

and specific "motion to dismiss." She asserts that EMS's objections to the expert reports does not encompass a "motion to dismiss."

The substance of a motion, rather than its title, determines its nature. *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980); *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 142 (Tex. App.—Texarkana 2000, no pet.). A motion's substance is to be determined from the body of the instrument and its prayer for relief. *Tex.-Ohio Gas, Inc.*, 28 S.W.3d at 142.

In the "introduction" section of its objections, EMS stated: "[a]lthough these reports attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, they fail to comply for the reasons set forth below and this case should be dismissed." The body of the motion described the various failures of the respective expert reports. Next, under a section labeled "IV," EMS asserted "[t]here are no reports filed by [Zamarripa] and there [sic] claims should be dismissed." While the motion's prayer asks the trial court to "sustain their objections," it also asks for "such other and further relief . . . ."

We conclude that the trial court could reasonably have construed EMS's motion objecting to Zamarripa's expert reports as a motion to dismiss. Therefore, the trial court did not abuse its discretion in granting EMS's "motion to dismiss." *See id.* Zamarripa's first issue is overruled.

## V.     EXPERT REPORTS AS TO EMS

By her second issue, Zamarripa argues the expert reports served on EMS comply with the requirements of chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.

6

Zamarripa first addresses Tibaldo's qualifications. In addressing the substance of the reports, Zamarripa claims that Tibaldo's report addressed the applicable standard of care and how EMS breached the standard of care, whereas Dr. Harlass's report discussed causation.

We first address Dr. Harlass's expert opinion regarding causation. Zamarripa argues that Dr. Harlass's report provided a "fair summary" of his opinions "regarding the causal relationship between the failure of [EMS] to provide care in accord with the pertinent standard of care."

Relative to causation as applied to EMS, Dr. Harlass's initial report stated:

The ground ambulance transfer (and the Hidalgo County EMS personnel's failure to divert) allowed her bleeding and abruption to continue to progress to where she became non-responsive and had cardiac arrest. As a result of the health care personnel's breaches, Mrs. Flores he [sic] suffered placental abruption, cardiac arrest, DIC, and death, and her fetus died.

Dr. Harlass's supplemental report further stated:

. . . due to the breaches of care by EMS in doing the transfer of Mrs. Flores on 5/15/12 via a ground ambulance for a cross-country transfer when she was in preterm labor and she had a known placental accreta (that can detach and begin to bleed profusely), Mrs. Flores was in a location (ambulance on the highway) when and where timely emergent C-section and hysterectomy surgery was not available when she began to bleed from the abrupted placenta. Her bleeding caused her cardiovascular arrest due to lack of oxygen carried to the heart for sufficient pumping. This collapse led to her DIC and her death. Due to the BAH [CCMC] personnel's breaches of care in informing the EMS personnel not to divert when Mrs. Flores was in an emergency situation (oxygen deprivation and bleeding) and due to EMS's breach of care in not diverting, her bleeding continued unabated and she suffered cardiovascular arrest, DIC and death.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the

7

harm would not have occurred. *Tenet Hosps. Ltd. v. Barajas*, 451 S.W.3d 535, 547–48 (Tex. App.—El Paso 2014, no pet.). The expert report must explain the basis for the causation opinions by linking the expert's conclusions to the alleged breach. *Barajas*, 451 S.W.3d at 548; *see Wright*, 79 S.W.3d at 53. Causation cannot be inferred; it must be clearly stated. *Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.). "[W]e are precluded from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Fulp v. Miller*, 286 S.W.3d 501, 509 (Tex. App.—Corpus Christi, 2009, no pet.); *see Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). Moreover, "the only information relevant to the inquiry is within the four corners of the document." *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).

Dr. Harlass's report does not explain how EMS's failure to divert caused Flores's death. Dr. Harlass concludes that EMS's failure to divert allowed Flores's bleeding to continue, but he fails to explain to where EMS should have diverted, whether other facilities were even available or within a distance that would allow for timely intervention, whether the facilities would have been able to provide the prescribed treatment, and whether diverting would have probably saved Flores's life. Thus, without the aid of natural inferences "as to what the expert likely meant or intended," Dr. Harlass fails to explain how a diversion would have affected the ultimate outcome. *See Fulp*, 286 S.W.3d at 509.

We conclude that Dr. Harlass's report contains analytical gaps that fail to connect EMS's failure to divert to having caused Flores's death. *See Wright*, 79 S.W3d at 52;

8

*see also Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 510–11 (Tex. 1995) (concluding the premature attempt to wean patient from respirator leading to patient's death did not proximately cause death when the patient had "only a fifty percent or less chance of survival"); *Jones v. King*, 255 S.W.3d 156, 160–61 (Tex. App.—San Antonio 2008, pet. denied) (concluding the report failed to meet the standards with regard to causation where the report failed to link any delay in diagnosis to any additional pain or suffering or exacerbation of the meningitis than would have occurred in the face of the earlier diagnosis). We further conclude that Dr. Harlass report does not qualify as an "expert report" under Texas law with respect to EMS because it fails to adequately explain how EMS's transportation delays were substantial factors in bringing about Flores's death. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). Given Zamarripa's failure to meet the statutory element of causation with respect to EMS, the trial court did not abuse its discretion by granting EMS's motion to dismiss. *See Palacios*, 46 S.W.3d at 878–79. Zamarripa's second issue is overruled.

## VI.    EXPERT REPORT AS TO CCMC

By her third issue, Zamarripa argues the trial court erred by granting CCMC's motion to dismiss. She contends that Dr. Harlass's report satisfied the requirements of chapter 74 by sufficiently explaining the causal connection between CCMC's alleged breach of the standard of care and Flores's death. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). Specifically, Zamarripa contends that Dr. Harlass's report "established that CCMC's breach[2] caused [Flores] to be stranded on a highway, in an

---

[2] CCMC's alleged breach was its failure to divert EMS to a closer medical facility rather than allowing EMS to proceed to CCMC.

9

ambulance, without access to life-saving surgery, while bleeding to death and suffering cardiac arrest." We disagree.

Although Dr. Harlass need only offer a "fair summary" of statutory requirements, his conclusions regarding CCMC's alleged breach of the standard of care and Flores's death is insufficient. *See Palacios*, 46 S.W.3d at 879. Similar to the failures in providing causation regarding EMS, Dr. Harlass fails to explain whether a closer facility existed, whether the facility would have been able to administer the necessary treatment, and whether Flores's death would have probably been prevented had CCMC directed EMS to divert to a closer facility. We are precluded from filling gaps in Dr. Harlass's report by drawing these inferences. *See Fulp*, 286 S.W.3d at 509.

By failing to adequately provide a "fair summary" of the causation of Flores's death regarding CCMC, Dr. Harlass's report did not comply with the statutory requirements. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878–79. Accordingly, the trial court did not abuse its discretion by granting CCMC's motion to dismiss. Zamarripa's third issue is overruled.

## VII. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
22nd day of November, 2016.

10