

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00028-CV
_____

WANDA J. MCBRIDE, Appellant

V.

DR. PAVAN RAO SARIDENA, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 2018-841-B

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Dr. Pavan Rao Saridena performed an esophagogastroduodenoscopy (EGD) on Wanda J. McBride to inspect her stomach for polyps. McBride sued Saridena alleging his actions during the procedure caused a tear in her stomach that had to be repaired through emergency surgery. After Saridena's objections to her initial expert report were sustained, McBride filed a second expert report. The trial court sustained Saridena's objections to the supplemental report and dismissed McBride's petition for failure to file an expert report compliant with Section 74.351(r)(6) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

On appeal, McBride contends that the trial court erred in dismissing her lawsuit because (1) her expert was qualified to make the expert report, (2) the supplemental report provided sufficient opinions about the standards of care and its breach, and (3) the supplemental report provided sufficient opinions on causation. Because we find that the trial court was within its discretion to find that the expert report failed to sufficiently address causation, we affirm the trial court's order.

## I.      Background

In February 2016, McBride went to Saridena's office complaining of "epigastric pain[,] . . . nausea[,]" and constipation. Saridena examined her abdomen and found "epigastric tenderness." Among his recommendations was an EGD, a procedure where an endoscope is inserted into the patient's mouth and advanced into the stomach and duodenum. Two days later, Saridena performed an EGD on McBride. During the procedure, McBride's stomach suffered a

2

deep tear, and she was transferred by ambulance to Good Shepherd Hospital in Longview, Texas. Saridena's EGD report stated:

> DESCRIPTION OF PROCEDURE: After the risks benefits and alternatives of the procedure were thoroughly explained, informed consent was obtained. The endoscope was introduced through the mouth and advanced to the second portion of the duodenum. The instrument was slowly withdrawn as the mucosa was fully examined.
>
> . . . .
>
> STOMACH: There was atrophic gastritis with evidence of scarring in the lower stomach likely healed prior ulcer. Botox (8cc) was injected around the pylorus and dilated pyloric channel with 18mm TTS balloon with small superficial tear in the pyloric channel. [W]hile with drawing [sic] the scope bleeding noted in the proximal stomach with evidence of deep spontaneous tear.
>
> . . . .
>
> COMPLICATIONS: There were no complications.
>
> . . . .
>
> RECOMMENDATIONS: Transfer to the hospital for further evaluation of abdominal pain. Surgical consult as needed.

At the hospital, Dr. Todd Waltrip determined that she had suffered a "perforated hollow viscus with free intraperitoneal air and peritonitis," and to repair the tear, he performed an "exploratory laparotomy, closure of lesser curvature gastric perforation, retrocolic Roux-en-Y gastrojejunostomy, feeding jejunostomy tube."

In May 2018, McBride filed her original petition alleging that her injuries were caused by Saridena's negligence. McBride tendered an expert report and curriculum vitae (CV) from gastroenterologist Amit Ahuja, M.D. Saridena filed three objections to the report and a motion

3

to dismiss under Section 74.351(a) of the Texas Civil Practice and Remedies Code. After a hearing, the trial court sustained Saridena's objections but denied his motion to dismiss.

McBride later tendered a supplemental expert report from Ahuja with an attached CV. Saridena again filed three objections to the supplemental expert report and a motion to dismiss, specifically arguing that (1) Ahuja was not qualified to tender an expert report because he professed a "lack of knowledge of the standard of care applicable to the performance of the procedure at issue"; (2) Ahuja's opinions about the standard of care were conclusory, insufficient, and baseless; and (3) Ahuja's opinion on causation stemming from any breach of the standard of care was conclusory and baseless.

McBride's response to Saridena's motion included Saridena's EGD report and a statement from Ahuja about the number of EGD procedures he had performed in the preceding three years. The trial court held a hearing in January 2020, and the court issued an order sustaining Saridena's objections to the supplemental report and dismissing McBride's petition, with prejudice. The trial court's order did not state which of Saridena's arguments formed the basis of the opinion. Despite McBride timely filing a request for and notice of overdue findings of fact and conclusions of law, none were ever filed. McBride appealed from the trial court's order.

## II. Standard of Review

"We review a trial court's decision regarding the adequacy of an expert's report under the [Texas Medical Liability] Act for abuse of discretion." *CSL S Longview v. Walling*, No. 06-20-00069-CV, 2021 WL 96867, at *1 (Tex. App.—Texarkana Jan. 12, 2021, no pet.) (mem. op.).

"In analyzing a report's sufficiency under this standard, we consider only the information contained within the four corners of the report." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). "In assessing the sufficiency of the report, a court may not draw inferences." *CSL S Longview*, 2021 WL 96867, at *4 n.4.

To reverse the trial court, we must find that the court acted arbitrarily or unreasonably without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). "A trial court will be deemed to have acted arbitrarily and unreasonably if the trial court could have reached only one decision, yet reached a different one." *Marent v. Asah*, 486 S.W.3d 680, 684 (Tex. App.—Texarkana 2016, no pet.). That said, "[a] trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court." *Estate of Birdwell ex rel. Birdwell v. Texarkana Mem'l Hosp., Inc.*, 122 S.W.3d 473, 477 (Tex. App.—Texarkana 2003, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

## III.    Applicable Law

As a healthcare liability case, this matter is governed by the Texas Medical Liability Act (TMLA), codified in Chapter 74 of the Texas Civil Practice and Remedies Code, in which the Legislature required all healthcare liability claims to be scrutinized by an expert before their submission to a fact-finder. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam). Section 74.351(a) provides that the plaintiff "not later than the 120th day after the date each defendant's original answer is filed, serve on [each] party or the party's attorney one or more expert reports." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must provide a fair

summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). If the claimant's report is timely filed, but allegedly deficient, the trial court may grant a single, thirty-day extension to cure that deficiency. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

A trial court must grant a party's motion to dismiss under Section 74.351 if it appears that the report does not represent a good-faith effort to comply with subsection (r)(6) or is not sufficiently specific "to provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). A good-faith effort also requires that the report discuss the standard of care and breach of that standard with sufficient specificity to inform each defendant of the conduct the plaintiff has questioned and to provide a basis for the trial court to conclude that the claims have merit. *Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam). Here, the report must provide notice of what conduct forms the basis of McBride's complaints and provide a basis for the trial court to conclude that McBride's complaints have merit. *See Longino*, 183 S.W.3d at 917.

The trial court did not specify which of Saridena's three objections its order was based on. As a result, to prevail on appeal, McBride must show that the trial court abused its discretion on all three grounds. Because it is dispositive of this appeal, we address only the sufficiency of

6

the report's claims related to causation. *See Mooring v. Britton*, No. 07-20-00253-CV, 2021 WL 537205, at *2 (Tex. App.—Amarillo Feb. 12, 2021, pet. filed) (mem. op.).

## IV.    Dr. Ahuja's Report

In her third point of error, McBride contends that the trial court erred in granting Saridena's objections and dismissing her suit because the supplemental report provided sufficient opinions that Saridena's breaches of the standard of care proximately caused McBride's injuries.

A "report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013) (quoting *Palacios*, 46 S.W.3d at 879). Still, "[a] report that merely states an expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements." *McKellar v. Cervantes*, 367 S.W.3d 478, 483 (Tex. App.—Texarkana 2012, no pet.); *see Wright*, 79 S.W.3d at 52. "[T]he expert must explain the basis of his statements to link [the expert's] conclusions to the facts." *Wright*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). Moreover, the issue of "[w]hether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d at 880.

In his supplemental report, Ahuja stated a standard of care and four ways that he believed Saridena breached that standard:

> First, it is clear from the office visit dated February 16, 2016[,] that there was no discussion of the potential use of Botox nor the possibility of performing a dilation maneuver during the EGD procedure. Botox therapy is not typically performed on routine EGD exams and is reserved for particular conditions . . . .

7

. . . .

. . . . Therefore, I believe that in this particular case, Dr. Pavan Saridena's documented discussion with the patient specifically lacking any mention of Botox prior to the EGD exam fell below standard of care. Likewise, if there is any potential for a dilation maneuver during EGD exam, this discussion should be had with the patient prior to the EGD exam.

. . . .

Second, there seems to be an inadequate diagnostic plan based on the medical records reviewed from the office visit on February 16, 2016. There is no mention of the potential for a biliary (gallbladder) problem which typically would be addressed by ordering an ultrasound of the abdomen and a HIDA scan with CCK injection. . . . I also believe that it would have been prudent to first check labs and a routine CT of the abdomen/pelvis in this patient to rule out GI obstruction prior to proceeding with an EGD. Again, I think a CTA exam [such as the one performed in this case] is appropriate but not until other more common problems have been ruled out. Due to the aforementioned missing items, a lack of a comprehensive diagnostic plan, and an omittance of discussion of the potential use of Botox and a dilation maneuver during endoscopy, it is my opinion that Dr. Pavan Saridena failed to meet the standard of care in terms of the interview of the patient and documentation and discussion of a diagnostic and therapeutic plan.

Third, it is clear that during the EGD procedure performed on 2/18/16, there is lack of description of the pylorus area of the stomach . . . . which was the target of therapy with Botox and balloon dilation. . . . No reason for the dual therapy that was administered was documented. . . . [T]here was no description of how long the balloon dilation was held for [and at what pressure, even though] . . . it is standard of care to [do so]. . . . Several unanswered questions remain regarding the "deep spontaneous tear" including the dimensions and exact location of this tear, whether the bleeding was a slight ooze or was it a brisk bleed, and was it obvious at the time that there was a perforation or not. My overall impression of the endoscopic report is that there is a lack of detail of findings and I believe it to be a substandard that does not meet the standard of care.

Fourth, the EGD procedure lasted 10 minutes[,] . . . and it is apparent that the patient woke up from anesthesia with significant abdominal pain not be [sic] expected after an EGD procedure despite performing dilation and Botox injection. . . . [O]ne certainly does not expect a perforation to occur after an EGD exam. Although any adverse event is possible, I certainly would not expect a perforation

8

> in this particular case given the available description of what transpired during the EGD exam. I can only say that the pre-procedure probability of an adverse event occurring seems at high [sic] than average risk given the patient's long list of comorbidities, a fact that likely should have been documented during the initial patient interview on February 16, 2016.

Based on those four breaches of the standard of care, the report concluded, "It is my opinion that the Botox and dilation maneuver caused the perforation sustained by Wanda J. McBride. There is no clear documentation of why these interventions were being performed. Therefore, it is my opinion that the Botox and dilation therapy should never have been performed."

In short, the report alleged that Saridena breached the standard of care by (1) failing to discuss and/or document the possible use of Botox and dilation; (2) failing to create a diagnostic plan by ruling out more common problems; (3) failing to describe the affected area of the stomach, the reason for using both Botox and dilation, and the post-EGD bleeding; and (4) failing to document McBride's higher-than-average risk of suffering an adverse event. Based on those breaches, Ahuja concluded that Saridena's use of both Botox and dilation caused the perforation in McBride's stomach. Yet, even assuming, without finding, that the report properly stated an adequate standard of care, the report fails to articulate how the use of both Botox and dilation or any of the four listed breaches of the standard of care proximately caused McBride's injuries. *See Wright*, 79 S.W.3d at 52.

Ahuja also concludes that "there is no clear documentation of why these interventions were being performed." Even so, Ahuja fails to explain how the lack of clear documentation led to the perforation, or any other injuries suffered by McBride. Nor does the report explain how clear documentation would have prevented the ultimate injury. *See, e.g.*, *Abshire*, 563 S.W.3d at

9

225–26 (report held sufficient where expert opined that failure to properly document patient's osteogenesis imperfecta (brittle bone disease) and back pain led to delay in diagnosis and proper treatment, which led to patient's paraplegia).

Ahuja also states, "[I]t is my opinion that the Botox and dilation therapy should never have been performed." Again, Ahuja does not explain why those procedures should not have been performed and how performing them led to McBride's injuries. *See Wright*, 79 S.W.3d at 52.

Finally, the report also fails to explain what Saridena should have done to avoid McBride's injuries. *See Palacios*, 46 S.W.3d at 879.

For these reasons, we find that the report fails to make a good-faith effort to factually explain with sufficient specificity how proximate cause will be proven. The report also failed to provide a basis for the trial court to conclude that the claims had merit. As a result, the trial court was within its discretion to determine that the report failed to link Ahuja's conclusions to the facts of the case, to grant Saridena's objection to the report's adequacy on causation, and to dismiss the case. *See Wright*, 79 S.W.3d at 52. We, therefore, overrule this point of error.

## V.    Conclusion

We affirm the trial court's order.


Scott E. Stevens
Justice

Date Submitted:     October 14, 2020
Date Decided:       May 14, 2021

10