In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00053-CV**
_____

**DEBORAH ROSE EEZZUDUEMHOI, PLLC D/B/A/ SOUTHEAST TEXAS OPTHALMOLOGY THE GLAUCOMA CENTER AND DEBORAH ROSE EEZZUDUEMHOI, Appellants**

**V.**

**PHILLIS DELLI, Appellee**

_____

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-208,175**
_____

**MEMORANDUM OPINION**

The Texas Medical Liability Act ("TMLA") requires plaintiffs asserting a health care liability claim to serve each defendant with an "adequate" expert report or face dismissal of their claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351. In this interlocutory appeal, Appellants Deborah Rose Eezzuduemhoi ("Dr. Eezzuduemhoi") and Deborah Rose Eezzuduemhoi, PLLC d/b/a Southeast Texas Ophthalmology The Glaucoma Center ("The Glaucoma Center") (collectively

1

"Defendants" or "Appellants") argue that the trial court abused its discretion by denying their TMLA motion to dismiss. The Defendants contend the expert's report is not adequate because it is speculative, fails to consider what condition Appellee Phillis Delli's ("Appellee," "Plaintiff," or "Phillis") eyes would be in without the surgery, contains conclusory statements and no more than *ipse dixit*, and only addresses the alleged injury to Phillis's[1] left eye, rather than the "ultimate injury" which Plaintiff contends she received to both eyes. Because we cannot say the trial court abused its discretion in denying the motion to dismiss, we must affirm.

The Original Petition

Phillis Delli filed her Original Petition on August 19, 2021, naming Dr. Eezzuduemhoi and The Glaucoma Center as defendants. Delli alleged that she went to The Glaucoma Center on April 26, 2019 for a consultation for cataract surgery and complaints about vision difficulties and problems with glare from headlights when driving at night. The petition alleged that Dr. Eezzuduemhoi performed cataract extraction with intraocular lens implant of the left eye on August 26, 2019, and the surgery was complicated "by a posterior capsule rent with vitreous loss[,]" and a "+21.00 D anterior chamber intraocular lens (ACIOL) was placed." In follow-

---

[1] Phillis Delli died shortly after filing this suit, and her daughter Billie Delli continues to prosecute the lawsuit as executrix of Phillis's estate. The claims against the Defendants are for negligence, they relate to complications from eye surgery, and the appellate record contains no allegation that Phillis's death was related to the surgery or treatment provided by the Defendants.

2

up visits over the next two months, Delli received four prescriptions and was diagnosed with left eye corneal edema and left eye ocular hypertension, with a plan ultimately to replace the ACIOL with a different lens implant.

On November 4, 2019, Phillis underwent ACIOL "explantation" at The Medical Center of Southeast Texas and a "3-piece Alcon Lens Model mn60ac" was inserted. At follow-up visits over the next month, she complained of foreign body sensation in her left eye, and she was told that an anterior vitrectomy of the left eye was necessary due to vitreous in the anterior chamber.

Phillis underwent a third eye surgery performed by Dr. Eezzuduemhoi on December 9, 2019. The next day, Phillis presented with anterior vitrectomy of the left eye, and she was instructed to continue her medications. At follow-up visits the following month, she stated that her vision seemed to be getting worse, and on January 27, 2020, Dr. Eezzuduemhoi told Phillis there was nothing more the doctor could do for her, and the doctor continued two of Phillis's prescriptions.

On February 5, 2020, Phillis saw Dr. Talbot for a second opinion, who observed "significant iris abnormalities including a hole inferiorly at 5 oclock, atrophy at 6 oclock, and iridocorneal adhesions." Dr. Talbot concluded that Phillis would require another surgery, including a "corneal transplant, IOL reposition or exchange, and iris repair OS." Dr. Talbot referred Phillis to Dr. Hamill at Baylor College of Medicine. On February 21, 2020, Phillis saw Dr. Hamill, who diagnosed

3

her with "corneal edema OS, pseudophakia OS, anterior synechiae OS, and age-related cataract of the right eye[,]" and the left eye showed a "tilted scleral PCIOL with severe diffuse corneal edema, a temporal vascularized corneal scar, and multiple iridocorneal adhesions[.]" A pre-operative exam on May 18, 2020, revealed "pseudophakic bullous keratopathy of the left eye with obscured view of the anterior segment and posterior segment with multiple iridocorneal adhesions of peripheral iris defects." She underwent a fourth procedure on her left eye on July 8, 2020, for a "PKP, iris reconstruction, IOL exchange for a trans-sclerally sutured lens of the left eye." One day after surgery, Phillis went for a follow-up visit, complaining of a slight headache. An examination revealed that the graft was in a good position, and there was some corneal edema with mild AC reaction. Phillis was to take two medications and return in a week, and after several more follow-up visits, she was "basically" doing well with "no complaints."

According to the petition, "[t]he pathology of the cornea revealed diffuse stromal edema, a retrocorneal fibrotic membrane, and near-total absence of endothelial cells[,]" and "[t]he damage to Plaintiff's eye was caused by Defendants' negligence." The petition asserted claims against Dr. Eezzuduemhoi for negligence and gross negligence for:

1. Failing to timely correct the ACIOL haptic.
2. Failing to refer Plaintiff to a cornea specialist to expedite the timely repair of the ACIOL haptic.
3. Failing to correct the malpositioned sclerally-fixated PCIOL.

4

4. Such other and further acts of negligence as may be supplemented as a result of discovery performed in this suit.

The petition also stated claims against The Glaucoma Clinic under a theory of respondeat superior for negligence and gross negligence. Plaintiff sought damages for medical bills, pain and suffering, mental anguish, loss of earning capacity, physical impairment, and loss of enjoyment of life as well as interest and attorney's fees. Plaintiff also sought exemplary damages.

## Dr. Bradley's Report

Phillis served a report from Dr. Jay Cameron Bradley on October 4, 2021.[2] In his report, Dr. Bradley stated that he is a board-certified ophthalmologist and currently practicing as a "Cornea, External Disease, Cataract, & Refractive Surgery specialist" in Lubbock, Texas. Bradley stated that he had reviewed Phillis's medical records from The Glaucoma Center, The Medical Center of Southeast Texas, and Baylor College of Medicine, and he included a summary description of Phillis's history from April 26, 2019 through August 27, 2020.

Bradley stated that for patients with a haptic of an ACIOL or a malpositioned or "tilted" sclerally-fixated posterior chamber intraocular lens, the standard of care

---

[2] In the initial motion to dismiss under the TMLA, the Defendants argued that the matter should be abated until a representative of Phillis's estate had been appointed. Plaintiff filed a Suggestion of Death of Plaintiff, Phillis Delli on December 4, 2021, and Letters Testamentary naming Billie Delli ("Billie") as the executrix of Phillis's estate. Defendants then refiled their Chapter 74 Motion to Dismiss RE Expert Report.

requires that the lens needs to be repositioned or exchanged as soon as possible to avoid progressive and irreversible damage to the cornea. According to Bradley, "[i]n both instances in this case, there were prolonged delays before the issue was corrected." Dr. Bradley stated that Dr. Eezzuduemhoi should have "corrected the ACIOL haptic in the wound and the malpositioned sclerally-fixated PCIOL without delay to prevent progressive and irreversible damage to the cornea [or] referred the patient to a cornea specialist if she was unable to correct these issues." In Dr. Bradley's opinion, Dr. Eezzuduemhoi breached the applicable standard of care by failing to correct the ACIOL haptic in the wound for over seven weeks after the initial surgery and failing to correct the malpositioned sclerally-fixated PCIOL.

Dr. Bradley states:

Dr. Eezzuduemhoi delayed correction of both issues for a prolonged period of time directly resulting in progressive and irreversible corneal damage. When intraocular lens implants are not in correct position (such as in this case), the lens implant moves inside the eye and rubs against the cornea. This causes the endothelial cells (which line the inner surface of the cornea and keep the cornea clear) to progressively die, resulting in corneal swelling and cloudiness. If the malpositioned intraocular lens implant is not corrected, the number of endothelial cells progressively decrease over time until the cornea is irreversibly damaged and a corneal transplant is required to clear the cornea. The delays in care of this case resulted in a need for additional surgery and poor outcome. With earlier intervention of the ACIOL haptic in the wound and the malpositioned sclerally-fixated PCIOL, further surgery would most likely have been avoided and a better outcome would most likely been attained.

6

According to Dr. Bradley, Phillis had complicated cataract surgery, and because ACIOL haptic in the surgery wound and malpositioned sclerally-fixated PCIOL were not managed "urgently[,]" Phillis developed progressive and irreversible corneal damage. Dr. Bradley wrote that most patients who suffer these issues are able to achieve "complete restoration of vision[,]" and Phillis was unable to achieve such recovery due to the lack of prompt diagnosis and treatment.

Defendants' Motion to Dismiss

In Defendants' motion to dismiss, the Defendants argued that Dr. Bradley's report did not meet the requirements of the TMLA because "causation of the 'ultimate injury' is lacking." Specifically, the motion states:

> Dr. Bradley was not provided the affidavit of Ms. Billie Delli, and therefore could not have addressed the "ultimate injury," *i.e.*, the full scope of damages claimed in this case.
> Dr. Bradley does not address the status of Ms. Delli's right eye.

Additionally, according to the Defendants, Dr. Bradley's statements that Phillis had a "poor outcome[]" and that most patients in Phillis's position "often enjoy complete restoration of vision[]" are impermissibly conclusory. The Defendants also argued that an expert report must address other plausible causes of the harm for which recovery is sought, and Dr. Bradley should have addressed the problems Phillis had with her right eye because it "would point to causes and conditions bearing on the

7

left eye[.]"[3] According to the Defendants, Dr. Bradley's report was deficient under the TMLA standards, and the case should be dismissed.

Attached to the Defendants' motion to dismiss was a copy of Dr. Bradley's report and Billie Delli's affidavit. Billie's affidavit was signed and sworn on September 23, 2021. In her affidavit, Billie described her mother Phillis before the surgery as outgoing and very involved with her family. According to Billie, after her surgery, Phillis was unable to work, financially dependent, withdrawn, and "sorrow-filled[.]"

At the hearing on the motion to dismiss, Defendants argued that, even though Plaintiff's burden at this stage of the litigation does not require it to marshal all its proof, Plaintiff is still required to "provide a reasonably detailed explanation based upon the facts of how they would prove proximate causation at trial."

Plaintiff's Response to Motion to Dismiss

In their response to the Defendants' motion to dismiss, Plaintiff argued that Dr. Bradley's report provides "very specific and consistent opinions" about the probable cause of Phillis's injuries. According to Plaintiff, Billie's affidavit was not executed until forty-one days after Dr. Bradley's report was issued, and the affidavit has no bearing on whether the report meets the TMLA requirements. Plaintiff also

---

[3] The Defendants' motion to dismiss does not challenge Dr. Bradley's qualifications nor his opinions on standard of care and breach.

argues that Dr. Bradley's failure to address Phillis's right eye is not relevant because "only the left eye is at issue in this case." Plaintiff argues that Dr. Bradley's opinion on causation is not conclusory because it provides a fair summary of the causal relationship between the breach and the injury, it is sufficient to inform Defendants of the specific conduct Plaintiff challenges, and it provides a sufficient basis for the trial court to conclude that Plaintiff's claims have merit.

At the hearing on the motion to dismiss, Plaintiff argued the "gist of this entire case [] only has to do with [Phillis's] left eye[]" and the allegations about Phillis's "life enjoyments" and how problems with her right eye may have affected the left eye only go to the scope of damages.

After the hearing on the motion to dismiss, the trial court signed an order denying Defendants' motion to dismiss. Defendants timely filed a notice of interlocutory appeal.

Standard of Review and Applicable Statutory Requirements

The TMLA governs health care liability claims and requires that the plaintiff, to avoid dismissal, serve an expert report addressing liability and causation as to each defendant within 120 days after the defendant files an original answer. *Rogers v. Bagley*, 623 S.W.3d 343, 348 (Tex. 2021) (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)). The purpose of the expert report requirement is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of

9

potentially meritorious claims. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)); *see also Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012) ("[Expert report] requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed."). In accordance with that purpose, the Act provides a mechanism for dismissal of the claimant's suit in the event of an untimely or deficient report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

In a case under the TMLA, we review a trial court's ruling on a motion to dismiss challenging the adequacy of an expert report for an abuse of discretion. *See Abshire*, 563 S.W.3d at 223; *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam); *Palacios*, 46 S.W.3d at 877-78. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). A trial court's ruling does not constitute an abuse of discretion simply because the appellate court would have ruled differently under the circumstances. *See id.* A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

When reviewing the sufficiency of a report, "we consider only the information contained within the four corners of the report." *Abshire*, 563 S.W.3d at 223 (citing *Palacios*, 46 S.W.3d at 878). And we view the entirety of the report rather than isolating specific portions or sections. *See E.D. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 667 (Tex. 2022) (appellate review of an expert's report must consider "the report as a whole[]") (citing *Van Ness*, 461 S.W.3d at 144); *see also Baty v. Futrell*, 543 S.W.3d 689, 694 (Tex. 2018).

While the report "need not marshal all the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the applicable standards of care, how the care rendered by the health care provider failed to meet the standards, and the causal relationship between that failure and the injury claimed. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (An expert report is sufficient under the TMLA if it "provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury[.]"); *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palacios*, 46 S.W.3d at 875, 878. In determining the adequacy of an expert report, a court reviews the pleadings to determine the claims alleged and whether the report addresses those claims. *See Christus Health Se. Tex. v. Broussard*, 306 S.W.3d 934, 938 (Tex. App.—Beaumont 2010, no pet.) (citing

11

*Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied)). The report must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539-40. The trial court need only find that the report constitutes a "good faith effort" to comply with the statutory requirements. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l); *see also Abshire*, 563 S.W.3d at 223; *Palacios*, 46 S.W.3d at 878. The Texas Supreme Court has held that an expert report demonstrates a "good faith effort" when it "(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit." *Baty*, 543 S.W.3d at 693-94.

The expert report "'must set forth specific information about what the defendant should have done differently'"; that is, "'what care was expected, but not given.'" *E.D.*, 644 S.W.3d at 664 (quoting *Abshire*, 563 S.W.3d at 226). A report adequately addresses causation when the expert explains "how and why" the breach of the standard caused the injury in question by "explain[ing] the basis of his statements and link[ing] conclusions to specific facts." *Abshire*, 563 S.W.3d at 224. The report need only make "'a good-faith effort to explain, factually, how proximate cause is going to be proven.'" *Id.* (quoting *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017)). The report presents a sufficient

causation analysis when it "draws a line directly" from the alleged breach of the standard of care to the ultimate injury. *See id.* at 225.

As to causation, "[n]o particular words or formality are required[]" to explain how the healthcare provider's negligence caused the patient's injury, but the report must contain more than a conclusory statement explaining the expert's theory of causation to comply with the good-faith-report requirements of the TMLA. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (footnotes omitted); *Jelinek*, 328 S.W.3d at 539-40. At this stage, an expert's report does not have to meet the evidentiary requirements needed to make an expert's opinion relevant and admissible in a summary judgment proceeding or a trial. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 517 (Tex. 2017) (per curiam).

Analysis

Here, the Appellants' primary challenge to the report pertains to its alleged insufficiency on causation. Appellants argue that Dr. Bradley's report is inadequate as to causation because (1) it does not address how bad Delli's vision was in both eyes before she saw Dr. Eezzuduemhoi, (2) it does not address Delli's vision at key points in the timeline, (3) it does not address whether Delli's vision improved after the cornea transplant, (4) it does not address how the condition in Delli's right eye "informs what could or could not have been accomplished with the left eye," and (5) it does not address how "vague terms such as 'poor outcome'" actually affect the

13

life activities Delli's daughter's affidavit describes. Appellants also argue that Dr. Bradley's opinion that there was a "poor outcome" with Delli's left eye is vague and conclusory. In addition, Appellants argue that Dr. Bradley did not compare what Delli's vision would have been without Dr. Eezzuduemhoi's treatment, and Bradley's opinion "about 'complete restoration of vision' is speculative and conclusory *ipse dixit*." According to Appellants, Dr. Bradley speculates that a different course of action by Dr. Eezzuduemhoi would have improved Delli's chances for a "complete restoration of vision" and this is nothing more than a "last chance" theory that the Texas Supreme Court rejected in *Kramer v. Lewisville Memorial Hospital*, 858 S.W.2d 397, 400 (Tex. 1993). Finally, Appellants argue that even if the complaints against Dr. Eezzuduemhoi are accepted as true, Dr. Bradley's report only addresses Delli's left eye, and because the report does not address Delli's right eye, it is inadequate for failing to address the "ultimate injury."

At this stage of the proceeding we may not require a claimant to "present evidence in the report as if it were actually litigating the merits[,]" and we cannot say that the trial court abused its discretion in reaching the conclusion that Dr. Bradley's amended report constitutes a good faith effort to comply with the TMLA's requirement to provide a fair summary of his opinion with respect to the causal relationship between Defendants' alleged breach and Phillis's claimed injury. We also cannot say that the amended report failed to inform the Defendants of the

14

specific conduct called into question or that it fails to provide a basis for the trial court to conclude the claims have merit. *See Abshire*, 563 S.W.3d at 226 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l), (r)(6); *Palacios*, 46 S.W.3d at 879); *Baty*, 543 S.W.3d at 693-94.

We disagree with Appellant's argument that the report contains nothing more than the mere *ipse dixit* of the expert. "[T]he mere *ipse dixit* of [an] expert—that is, asking the jury to take the expert's word for it—will not suffice." *Windrum v. Kareh*, 581 S.W.3d 761, 769 (Tex. 2019) (citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009); *see also Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 806 (Tex. 2006) (explaining that testimony is fundamentally unsupported when "the only basis for the link between the [expert's] observations and his conclusions was his own say-so[]" (citing *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 912-13 (Tex. 2004) (Hecht, J., concurring))). Here, the report contains Dr. Bradley's opinion that: Dr. Eezzuduemhoi delayed correction of the ACIOL haptic in the surgery wound and the malpositioned sclerally-fixated PCIOL; that when intraocular lens implants are not in the correct position, the implant rubs against the cornea; and that this causes the endothelial cells to die, which results in corneal swelling and cloudiness. Dr. Bradley also explained the basis of his opinions when he wrote that delayed correction of both issues for a prolonged period of time directly resulted in progressive and irreversible corneal damage, and that with earlier intervention of the

15

ACIOL haptic in the wound and the malpositioned sclerally-fixated PCIOL, further surgery would most likely have been avoided and a better outcome would most likely have been attained. Dr. Bradley's report "draws a line directly from" the Defendants' breach of the standard of care, to the delay in diagnosis and treatment, and to the eye injury. *See Abshire*, 563 S.W.3d at 225. Dr. Bradley explains "to a reasonable degree, how and why the breach caused the injury based on the facts presented." *See Jelinek*, 328 S.W.3d at 539-40.

The trial court could have also rejected Appellants' argument that the report was deficient because it only addressed the left eye and failed to address Phillis's right eye. The report explained sufficient detail at this preliminary stage to provide a basis for the trial court to conclude that Plaintiff's claims may have merit. The report contained an explanation with respect to the alleged causal relationship between Defendants' alleged breach and Phillis's left eye injury. We need not determine whether the report is deficient for failing to address an injury to Phillis's right eye because the Supreme Court has explained that an expert report is sufficient so long as it adequately addresses at least one liability theory against a defendant health care provider. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *see also Abshire*, 563 S.W.3d at 224 (explaining that the expert report need not account for every known fact).

16

We also cannot say the trial court abused its discretion in rejecting Appellants' suggestion that the claims alleged are nothing more than the "last chance" or "lost chance of survival" claims rejected in *Kramer*. *See* 858 S.W.2d at 400; *see also Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 859-62 (Tex. 2009) (addressing *Kramer* and explaining that the Texas Supreme Court has rejected the notion that the lost chance of survival or improved health is a distinct, compensable injury). At this stage of the litigation, the plaintiff is not required to marshal all evidence, and "the expert need not prove the entire case or account for every known fact[]" as long as it is a good-faith effort to explain factually how the plaintiff will prove proximate cause. *Abshire*, 563 S.W.3d at 224 (citing *Zamarripa*, 526 S.W.3d at 460).

Nor can we say that the trial court erred in rejecting Appellants' argument that Dr. Bradley's opinion on causation was deficient because it did not address "all the activities set forth in the affidavit of Ms. Billie Delli, *i.e.*, the 'ultimate injury' for which recovery in dollar damages is sought." In evaluating the sufficiency of the expert report, the trial court "could not look beyond the four corners of the report at this stage to determine whether the facts asserted in the pleading and the report were false." *See Broussard*, 306 S.W.3d at 939 (citing *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878). Billie's affidavit was first filed with the Defendants' motion to dismiss, and it was not available to Dr. Bradley when he wrote his report. Any

17

alleged deficiency in failing to address certain activities described in Billie's affidavit may be the subject of further development in discovery or the subject of other pretrial motions, but it is not instructive at this stage of the litigation because the failure to address Billie's affidavit does not render Dr. Bradley's expert report deficient under section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Broussard*, 306 S.W.3d at 939.

We overrule Appellants' issue, and we affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 3, 2022
Opinion Delivered November 17, 2022

Before Kreger, Horton and Johnson, JJ.